UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **In the matter of:** | Docket No.: |
| **Miguel Luna Perez, by his next friend Maria Perez,** | Case No.: |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| **Sturgis Public Schools and Sturgis Public Schools Board of Education,** | |
| Defendants. | |

Mark A. Cody (P42695)
Mitchell Sickon (P82407)
Michigan Protection and Advocacy Service, Inc.
Attorneys for Plaintiffs
4095 Legacy Parkway, Suite 500
Lansing, MI 48911-4263
(517) 487-1755
mcody@mpas.org
msickon@mpas.org

Caroline Jackson (Admitted April 11, 2018)
Attorney for Plaintiffs
National Association of the Deaf Law
and Advocacy Center
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
(301) 587-7466
caroline.jackson@nad.org

**COMPLAINT**

## I. INTRODUCTION

1. Plaintiff, Miguel Luna Perez ("Miguel" or the "Student"), by and through his next friend Maria Perez[1] and his undersigned counsel, hereby submits the following Complaint against Sturgis Public School ("Sturgis" or "the District") and Sturgis Public School Board of Education ("Sturgis Board"), (collectively "Defendants"), pursuant to the Michigan Persons with Disabilities Civil Rights Act ("PDCRA"), M.C.L. 37.1101 *et seq.*; Section 504 of the United States Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; and Title II of the Americans with Disabilities Act ("Title II"), 42 U.S.C. §§ 12131 *et seq*.

2. Plaintiff contends that Defendants discriminated against him by failing to provide a qualified sign language interpreter at any point during his educational career and failing to provide Miguel with an opportunity to access social events and extra-curricular activities while he was a student in Sturgis Public Schools.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

4. Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391 because: (i) each Defendant operates a place of business within the District and has sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced; and (ii) the acts and omissions giving rise to this claim have occurred within the District.

---

[1] Miguel asserts that he is incompetent to independently pursue his legal rights and requests this court appoint his mother, Maria Perez, as his guardian ad litem. *See* Fed. R. Civ. P. 17(c)(2).

### III.  PARTIES

5. Miguel is a 23-year-old deaf individual who resides in the Sturgis Public School District.

6. From 2004 through 2016, Miguel attended school in the District.

7. Miguel is an individual with a disability within the meaning of Section 504, the ADA, and the PDCRA, as he has a physical impairment that substantially limits one or more major life activities, including hearing, speaking, and communicating through speech.

8. Sturgis Public Schools is a recipient of federal financial assistance, subject to the requirements of Section 504, 34 C.F.R. § 104.11, and a public governmental entity subject to the provisions of the ADA, 42 U.S.C. §§ 12132, 12131(1)(A), (B).

9. Sturgis Public School Board of Education ("Sturgis Board") is the Board of Education for Sturgis Public Schools. The Sturgis Board is a recipient of federal financial assistance, subject to the requirements of Section 504, 34 C.F.R. § 104.11, and a public governmental entity subject to the provisions of the ADA, 42 U.S.C. §§ 12132, 12131(1)(A), (B). The Sturgis Board "exists for the purpose of providing a system of free, public education for students in grades Pre-K - 12 inclusive."[2] The Sturgis Board has the authority to supervise Sturgis.[3] Its powers include educating students and hiring, contracting for, scheduling, supervising, or terminating employees, independent contractors, and others who work at Sturgis.[4] These powers also include making many different kinds of decisions regarding the evaluation, compensation, discipline, and discharge of individual Sturgis personnel.[5] The Sturgis Board is

---

[2] Sturgis Public Schools Bylaws and Policies, Section 0112 "Purpose," available at http://www.neola.com/sturgis-mi/.
[3] *Id.*, Section 0121 "Authority."
[4] *Id.*, Section 0122 "Board Powers."
[5] *Id.*

3

responsible for ensuring Sturgis complies with state and federal laws, including disability rights laws, and to establish district-wide policies.[6]

## IV.

## FACTS

10. Miguel is deaf. He is substantially limited in one or more major life activities, including hearing, speaking, and communicating through speech. He has no other disabilities.

11. Miguel began attending Sturgis Public Schools in 2004 at the age of nine, having just moved to the United States from Mexico with his parents.

12. Miguel's parents speak only Spanish. They require a Spanish-language interpreter to communicate with any non-Spanish-speaking school personnel and they require Spanish-language translation of all written materials.

13. From 2004 to 2016, the District engaged in an ongoing practice of failing to provide Miguel with the auxiliary aids and services necessary for him to participate in and receive the benefits of Sturgis Public Schools and otherwise discriminated against Miguel solely because he is deaf.

14. When Miguel arrived at Sturgis Public Schools, he did not know English and only Spanish was spoken in his home.

15. Sturgis did not provide English Language Learner (ELL) services to Miguel.

16. On information and belief, Sturgis provides ELL services to all other students who speak a language other than English at home. On information and belief, Sturgis failed to provide ELL services to Miguel because he is deaf.

17. From the time Miguel began at Sturgis, school personnel noted he could not understand speech and relied on sign language to access communication. However, Sturgis never

---

[6] *Id.*, Section 0123 "Philosophy of the Board."

once provided a qualified sign language interpreter to enable Miguel to access classroom instruction or to benefit from social interaction with his peers.

18. Instead of providing a qualified sign language interpreter, Sturgis provided an educational assistant named Gayle Cunningham to assist Miguel.

19. Sturgis knew the Ms. Cunningham was not a qualified sign language interpreter, because she did not know sign language when they hired her and had no credentials whatsoever that may make her qualified to interpret for a deaf student.

20. Ms. Cunningham attempted to learn sign language from a book and from incidental instruction from a teacher of the deaf employed by St. Joseph Intermediate School District.

21. Ms. Cunningham's command of sign language was so poor that, when briefly paired with a different deaf student who used sign language, the other deaf student could not understand her at all.

22. Also, when Miguel subsequently met and interacted with individuals who knew sign language, Miguel could not understand any of them and they could not understand him.

23. Ms. Cunningham served as Miguel's sole communication facilitator from 2006 until May 2016.

24. During that time, Sturgis provided qualified sign language interpreters to another deaf student at Sturgis Public Schools.

25. Each time one of this other student's sign language interpreters would leave, Sturgis would make significant efforts to secure a replacement qualified sign language interpreter.

26. Sturgis made no attempt at any time to secure a qualified sign language interpreter to provide Miguel with access to the classroom.

27. At the time, Miguel's parents did not know and could not have known that Ms. Cunningham was not a qualified sign language interpreter or otherwise qualified to enable Miguel to access his education.

28. Miguel did not and could not have known that Ms. Cunningham was not a qualified sign language interpreter or otherwise qualified to enable him to access his education.

29. Miguel and his parents relied on representations from Sturgis that Ms. Cunningham was qualified to work with Miguel.

30. Sturgis never told Miguel or his parents that Ms. Cunningham did not know sign language.

31. Sturgis misrepresented to Miguel and his parents that Ms. Cunningham used "Signed English."

32. Ms. Cunningham did not know Signed English. She had invented her own system of signing.

33. Miguel's parents could not know that Ms. Cunningham did not know Signed English because they did not know English sign language and they did not know English.

34. Miguel could not know that Ms. Cunningham did not know Signed English because, when he arrived at Sturgis, he did not know English sign language and he did not know English.

35. Miguel did not know and could not know that Ms. Cunningham did not know sign language because she was the only consistent sign language model that Sturgis ever provided to Miguel.

36. Miguel did not and could not have known that Ms. Cunningham was not a qualified sign language interpreter, because he had never experienced a qualified sign language interpreter.

37. Sturgis failed to provide Miguel access to qualified teachers because he is deaf.

38. Due to Sturgis's failure to provide a qualified sign language interpreter, Miguel did not have access to any of his teachers at Sturgis Public Schools other than Ms. Cunningham, the educational assistant.

39. Ms. Cunningham has no qualifications to teach. Therefore, to the extent that Miguel had access to Ms. Cunningham, he did not have access to a qualified teacher.

40. Miguel and his parents did not know and could not know that Miguel did not have access to qualified teachers because Sturgis misrepresented to them that Ms. Cunningham was qualified to provide Miguel with access to these teachers.

41. Miguel's parents did not know and could not have known that Miguel did not have equal access to his classes, because Sturgis awarded Miguel A's in nearly all his classes.

42. In fact, during the four years that Miguel spent at Sturgis Public High School, he was on the Honor Roll every single semester or trimester.

43. The grades that Sturgis awarded Miguel misrepresented the extent to which Miguel had no access whatsoever to what was taught in class.

44. For example, even though Miguel took Biology at Sturgis, he does not understand the concept that plants make their own food (he understands only that plants are food) and he does not understand that his heart continues to beat when he is at rest. Miguel also has no concept of mammals versus reptiles.

45. Even though Miguel took history at Sturgis, he has no understanding of when this country was founded and does not know what slavery is. In response to questions about the Revolutionary War and the Civil War, Miguel was only able to discuss World War II, Hitler, and Martin Luther King, Jr.

46. Additionally, Miguel cannot read or write. He had so little access to English classes at Sturgis that, by May of 2016, he still did not know the words for many of the foods he regularly ate.

47. Miguel has had no behavioral problems whatsoever. His inability to learn at Sturgis is attributable solely to Sturgis's failure to provide the auxiliary aids and services necessary for him to receive instruction in the classroom.

48. Neither Miguel nor his parents knew or could have known that Sturgis was lying to them. Miguel had no ability to communicate with other students, so he could not compare his progress with his peers. Miguel's parents do not know English or sign language, so they could not review Miguel's homework or discuss with him what he was learning in school.

49. Beginning in approximately 2015, Sturgis took away Ms. Cunningham for four hours per day, leaving Miguel with no means of communicating with staff or students. Instead of providing Miguel with accessible instruction during this time, Sturgis enrolled Miguel in "web-based learning." Miguel could not possibly access this online curriculum because he could not read or write. Sturgis enrolled Miguel in a web-based curriculum, as opposed to providing him with educational services through a live teacher, solely because he is deaf.

50. Based on these representations by Sturgis, Miguel and his parents believed that Miguel had been receiving full access to his classes and would be graduating with a regular high school diploma in June 2016.

51. In March 2016, Miguel and his parents learned for the first time that Miguel would not be receiving a regular high school diploma but instead would be receiving a certificate of completion.

52. In August 2016, Miguel began attending the Michigan School for the Deaf (MSD).

53. All of the classes at MSD are conducted in American Sign Language. Therefore, Miguel has full access to all his classes at MSD.

54. In addition to the lack of access to instruction in the classroom, Miguel suffered the loss of social interaction due to Sturgis's failure to provide necessary auxiliary aids and services.

55. Sturgis further denied Miguel the opportunity to participate in extra-curricular activities offered to non-deaf students.

56. Sturgis also denied Miguel an Extended School Year program, routinely provided to other disabled students, solely because he is deaf.

57. The Sturgis Board is responsible for setting policies for the District and therefore is responsible for any injuries that Plaintiffs sustained.

58. The Sturgis Board has sufficient powers regarding the hiring, firing, and supervision of Sturgis employees to be held liable for their acts.

59. Defendants' acts have deprived Miguel of his equal opportunity to receive the benefits that other participants in Defendants' programs and services enjoy.

60. Defendants' acts were knowing and intentional.

61. Defendants acted with deliberate indifference toward Miguel's federally protected rights.

62. As a result of Defendants' conduct, Miguel has experienced severe emotional distress, such as humiliation, frustration, anxiety, sadness, hopelessness, isolation, and other forms of mental and emotional anguish.

## V.

## LEGAL CLAIMS

### COUNT I

### DEFENDANTS VIOLATED SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794

63. Plaintiffs incorporate by reference all previous paragraphs of the Complaint herein.

64. Pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its regulations, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794.

65. Defendants Sturgis and Sturgis Board are recipients of federal financial assistance and operate a public elementary or secondary education program or activity. Therefore, they are covered entities under 29 U.S.C. § 794.

66. Miguel is a person with a disability within the meaning of 29 U.S.C. § 794.

67. Defendants have intentionally discriminated against Miguel by failing to provide the auxiliary aids and services needed to ensure effective communication, in violation of 29 U.S.C. § 794 and its implementing regulations.

68. Defendants have intentionally discriminated against Miguel by excluding him from participation in and denying him the benefits of Defendants' programs or activities solely because he is deaf, in violation of 29 U.S.C. § 794 and its implementing regulations.

69. Defendants have otherwise intentionally discriminated against Miguel in violation of Section 504.

70. As a direct and proximate cause of Defendants' violation of Section 504, Miguel has suffered and continues to suffer severe and grievous mental and emotional suffering, humiliation, stigma, and other injuries he will continue to suffer.

## COUNT II

### DEFENDANTS VIOLATED TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12131 *et seq.*

71. Plaintiff incorporates by reference all previous paragraphs of the Complaint herein.

72. Title II of the ADA and its regulations provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. (*See also* 28 C.F.R. Part 35).

73. Defendants are each a public entity subject to Title II of the ADA, 42 U.S.C. § 12131.

74. Miguel is a person with a disability within the meaning of 42 U.S.C. § 12102.

75. Defendants intentionally violated Miguel's rights under the ADA its regulations by excluding him from participation in and denying him the benefits of Defendants' services, programs, and activities, on the basis of disability, and by subjecting him to discrimination in violation of 42 U.S.C. § 12132.

11

76. Defendants otherwise intentionally discriminated against Miguel in violation of 42 U.S.C. § 12132.

77. As a direct and proximate cause of Defendants' violations of the ADA, Miguel has suffered and continue to suffer severe and grievous mental and emotional suffering, humiliation, stigma, and other injuries he will continue to suffer.

## COUNT III

### DEFENDANTS VIOLATED THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, M.C.L. 37.1101 *et seq.*

78. Plaintiff incorporates by reference all previous paragraphs of the Complaint herein.

79. The Persons with Disabilities Civil Rights Act ("PDCRA") guarantees, as a civil right, the full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a disability. M.C.L. 37.1102.

80. The PDCRA further prohibits educational institutions from "[d]iscriminat[ing] in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids." M.C.L. 37.1402.

81. Defendants are each an educational facility within the meaning of M.C.L. 37.1102 and an educational institution within the meaning of M.C.L. 37.1401.

82. Miguel has a disability as defined in M.C.L.A. 37.1103.

83. Miguel's disability is unrelated to his ability to utilize and benefit from Defendants' services.

84. Defendants discriminated against Miguel in the full utilization of or benefit from the services provided and rendered by Defendants due to Miguel's disability.

85. Defendants otherwise violated Miguel's rights under the PDCRA.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. Find that Defendants violated state and federal law;

B. Find that Plaintiff is the prevailing party;

C. Award Plaintiff equitable and injunctive relief;

D. Award Plaintiff compensatory damages;

E. Award Plaintiff his reasonable attorneys fees and costs under 42 U.S.C. § 1988 and/or other applicable statues; and

F. Any other relief deemed necessary.

Respectfully submitted,

Dated: October 2, 2018    */s/* Mark A. Cody
Mark A. Cody (P42695)
Mitchell Sickon (P82407)
Michigan Protection and Advocacy Service, Inc.
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755
mcody@mpas.org
msickon@mpas.org

Caroline Jackson (Admitted April 11, 2018)
National Association of the Deaf Law and
Advocacy Center
8630 Fenton Street, Suite 820
Silver Spring, MD 20910
(301) 587-7466
caroline.jackson@nad.org

*Attorneys for Plaintiffs*