UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| In the matter of:<br><br>**Miguel Luna Perez,**<br><br>    Plaintiff,<br><br>v.<br><br>**Sturgis Public Schools and Sturgis Public Schools Board of Education,**<br><br>    Defendants. | Hon.  Paul L. Maloney<br><br>Case No.:    1:18-cv-01134-PLM-RSK<br><br>JURY TRIAL DEMANDED |

| | |
|---|---|
| Mark A. Cody (P42695)<br>Mitchell Sickon (P82407)<br>Michigan Protection and Advocacy Service, Inc.<br>Attorneys for Plaintiffs<br>4095 Legacy Parkway, Suite 500<br>Lansing, MI 48911-4263<br>(517) 487-1755<br>mcody@mpas.org<br>msickon@mpas.org<br><br>Caroline Jackson (Admitted April 11, 2018)<br>Attorney for Plaintiffs<br>National Association of the Deaf Law<br>and Advocacy Center<br>8630 Fenton Street, Suite 820<br>Silver Spring, MD 20910<br>(301) 587-7466<br>caroline.jackson@nad.org | Timothy Mullins (P280821)<br>Kenneth Chapie (P66148)<br>Giarmarco Mullins & Horton PC<br>Attorneys for Defendants<br>101 W Big Beaver Road, Suite 1000<br>Troy, MI 48084-5280<br>(248) 457-7000<br>(248) 248-404-6348 |

# **PLAINTIFF'S FIRST AMENDED COMPLAINT**

## I. INTRODUCTION

1. Plaintiff, Miguel Luna Perez ("Miguel" or the "Student"), by and through his undersigned counsel, hereby submits the following Amended Complaint against Sturgis Public School ("Sturgis" or "the District") and Sturgis Public School Board of Education ("Sturgis Board"), (collectively "Defendants"), pursuant to Title II of the Americans with Disabilities Act ("Title II"), 42 U.S.C. §§ 12131 *et seq.*; and the Michigan Persons with Disabilities Civil Rights Act ("PDCRA"), M.C.L. 37.1101 *et seq.*

2. Defendants have intentionally discriminated against Plaintiff by failing to provide him a qualified sign language interpreter, access to English Language Learner services, access to after school activities, and access to other programs, services and benefits of the school while he was a student in Sturgis Public Schools, because of his disability. Plaintiff brings this claim for compensatory damages and attorneys' fees.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

4. Plaintiff has exhausted all administrative remedies pursuant to 20 U.S.C. § 1415(l).

5. Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391 because: (i) each Defendant operates a place of business within the District and has sufficient contacts with this District to subject it to personal jurisdiction at the time this action is commenced; and (ii) the acts and omissions giving rise to this claim have occurred within the District.

## III.  PARTIES

6. Miguel is a 23-year-old deaf individual who resides in the Sturgis Public School District.

7. From 2004, when Miguel was 9 years old, through 2016, when he was 20 years old, Miguel attended school in the Sturgis Public School District.

8. Miguel is a qualified individual with a disability within the meaning of Title II of the ADA, and the PDCRA, as he has a physical impairment and a mental impairment that substantially limits one or more major life activities, including hearing, speaking, and communicating. See 42 U.S.C. §§ 1202, 12131(2).

9. Sturgis Public Schools is a public governmental entity subject to the provisions of Title II of the ADA, 42 U.S.C. §§ 12131, *et seq.*, and United States Department of Justice regulations implementing Title II, 28 C.F.R. Part 35.

10. Sturgis Public School Board of Education ("Sturgis Board") is the Board of Education for Sturgis Public Schools. The Sturgis Board is a public governmental entity subject to the provisions of Title II of the ADA, 42 U.S.C. §§ 12131, *et seq.*, and the United States Department of Justice regulations implementing Title II, 28 C.F.R. Part 35. The Sturgis Board "exists for the purpose of providing a system of free, appropriate public education for students in grades Pre-K – 12 inclusive."[1] The Sturgis Board has the authority to supervise Sturgis.[2] Its powers include educating students and hiring, contracting for, scheduling, supervising, or terminating employees, independent contractors, and others who work at Sturgis.[3] These powers also include making many different kinds of decisions regarding the evaluation, compensation,

---

[1] Sturgis Public Schools Bylaws and Policies, Section 0112 "Purpose," available at http://www.neola.com/sturgis-mi/.
[2] *Id.*, Section 0121 "Authority."
[3] *Id.*, Section 0122 "Board Powers."

discipline, and discharge of individual Sturgis personnel.[4] The Sturgis Board is responsible for ensuring Sturgis complies with state and federal laws, including disability rights laws, and to establish district-wide policies.[5]

## IV.  FACTS

11. Miguel is deaf. He is substantially limited in one or more major life activities, including hearing, speaking, and communicating.

12. Miguel requires a qualified sign language interpreter to communicate with individuals who do not know sign language.

13. Miguel began attending Sturgis Public Schools in 2004 at the age of 9, having just moved to the United States from Mexico with his parents.

14. Miguel's parents speak only Spanish. They are not deaf. They require a Spanish-language interpreter to communicate with any non-Spanish-speaking school personnel and they require Spanish-language translation of all written materials.

15. From 2004 to 2016, Sturgis and the Sturgis Board (collectively, "Sturgis") engaged in an ongoing practice of failing to provide Miguel with the auxiliary aids and services necessary for him to participate in and receive the benefits of Sturgis and otherwise discriminated against Miguel solely because he is deaf.

16. During this time, the St. Joseph Intermediate School District (ISD) provided information and support that Sturgis relied on to make decisions regarding how to accommodate Miguel, including the accommodations necessary to ensure effective communication.

---

[4] *Id.*
[5] *Id.*, Section 0123 "Philosophy of the Board."

### *Denial of English Language Learner Services*

17. When Miguel arrived at Sturgis, he did not know English and only Spanish was spoken in his home.

18. Sturgis did not provide English Language Learner (ELL) services to Miguel.

19. On information and belief, Sturgis provides ELL services to all other students who speak a language other than English at home.

20. On information and belief, Sturgis failed to provide ELL services to Miguel because he is deaf.

### *Denial of a Qualified Sign Language Interpreter*

21. From the time Miguel began at Sturgis, school personnel noted he could not understand speech and relied on sign language to access communication. However, Sturgis never once provided a qualified sign language interpreter to enable Miguel to access classroom instruction or to benefit from social interaction with his peers.

22. Instead of providing a qualified sign language interpreter, Sturgis provided an educational assistant named Gayle Cunningham to assist Miguel.

23. Sturgis knew that Ms. Cunningham was not a qualified sign language interpreter, because she did not know sign language when they hired her. Ms. Cunningham had no credentials whatsoever indicating that she was qualified to interpret to ensure effective communication with a deaf student.

24. Ms. Cunningham attempted to learn sign language from a book and from incidental instruction from a teacher of the deaf employed by the ISD.

25. After Sturgis hired her, Ms. Cunningham never took any formal classes intended to improve her sign language skills or to serve as a qualified sign language interpreter.

26. Even after working with Miguel for several years, Ms. Cunningham's command of sign language remained so poor that, when briefly paired with a different deaf student who used sign language, the other deaf student could not understand her at all.

27. Ms. Cunningham served as Miguel's sole communication facilitator from approximately 2006 until approximately May 2016.

28. Between 2012 and 2016, Sturgis provided qualified sign language interpreters to another deaf student at Sturgis.

29. Sturgis obtained a qualified sign language interpreter for this other student and replaced the qualified sign language interpreter if he or she left the position.

30. Over a 12-year period, Sturgis made no attempt at any time to secure a qualified sign language interpreter to provide Miguel with meaningful access to the classroom or any other Sturgis activities.

31. Over this 12-year period, Miguel's parents did not know and could not have known that Ms. Cunningham was not a qualified sign language interpreter or otherwise qualified to enable Miguel to access his education.

32. Over this 12-year period, Miguel did not and could not have known that Ms. Cunningham was not a qualified sign language interpreter or otherwise qualified to enable him to access his education.

33. Over this 12-year period, Miguel and his parents relied on misrepresentations from Sturgis and ISD personnel that Ms. Cunningham was qualified to work with Miguel.

34. Sturgis never told Miguel or his parents that Ms. Cunningham did not know sign language.

35. Sturgis misrepresented to Miguel and his parents that Ms. Cunningham used "Signed English."

36. Ms. Cunningham did not know Signed English. She essentially invented the signing system she used.

37. Miguel did not know and could not know that Ms. Cunningham did not know Signed English because, when he arrived at Sturgis, he did not know Signed English and he did not have meaningful access to other individuals who knew Signed English.

38. Miguel's parents could not know that Ms. Cunningham did not know Signed English because they did not know Signed English or any other form of sign language.

39. Miguel did not and could not have known that Ms. Cunningham was not a qualified sign language interpreter, because Sturgis never provided him with a qualified sign language interpreter.

40. Sturgis had access to a sign language proficiency evaluation provided through the Michigan Department of Education that would have reflected Ms. Cunningham's proficiency in sign language.

41. Sturgis never attempted to have Ms. Cunningham undergo an evaluation of her sign language proficiency during the time that she worked with Miguel.

42. Multiple different evaluations exist that reflect an individual's ability to interpret between English and sign language.

43. Sturgis never attempted to have Ms. Cunningham undergo an evaluation of her interpreting ability during the time that she worked with Miguel.

44. Beginning in approximately 2015, Sturgis took away Ms. Cunningham for multiple hours per day, leaving Miguel with no means of communicating with staff or students during that time.

### *Access To Extra-Curricular Activities And Other Programs And Services*

45. Sturgis denied Miguel the opportunity to participate in extra-curricular activities offered to non-deaf students throughout his time at Sturgis because he is deaf.

46. Sturgis denied Miguel access to other programs, services and benefits routinely provided to other students because he is deaf.

### *Sturgis' Misrepresentations Regarding Miguel's Communication Access to Academics*

47. Sturgis misrepresented to Miguel and his parents that Miguel had access to the same educational services that other students had.

48. Sturgis misrepresented to Miguel and his parents that Sturgis provided Miguel with auxiliary aids and services sufficient for him to participate and benefit from classroom instruction at Sturgis.

49. Sturgis misrepresented to Miguel and his parents that Sturgis believed that Miguel did not need other educational services that Sturgis denied to Miguel because he is deaf.

50. Sturgis intentionally misrepresented Miguel's academic achievement.

51. Sturgis awarded Miguel "A" or "B" grades in nearly all his classes.

52. During the four years that Miguel spent at Sturgis Public High School, he was on the Honor Roll every semester or trimester.

53. The grades that Sturgis awarded Miguel did not in any way reflect the education he was receiving or not receiving. Rather, these grades masked the fact that Miguel was learning nothing in his classes due to the absence of a qualified sign language interpreter.

54. Neither Miguel nor his parents knew or could have known that Sturgis was lying to them about Miguel's opportunity to access the curriculum. Miguel had never experienced sign language interpreters elsewhere other than Sturgis, so he could not compare his experience. Miguel's parents do not know English or sign language, so they could not discuss with Miguel his experience in school.

55. Based on all the misrepresentations by Sturgis, including his honor roll status for four years, his "A" and "B" grades, and the falsehood that Ms. Cunningham knew sign language, Miguel and his parents believed that Miguel had been receiving meaningful communication access to his classes and would be graduating with a regular high school diploma in June 2016 and going to college thereafter.

56. In March 2016, Miguel and his parents learned for the first time that Miguel would not be receiving a regular high school diploma but instead would be receiving a certificate of completion.

57. In May 2016, Miguel's parents and Sturgis agreed that Miguel should attend the Michigan School for the Deaf for the following school years.

58. In June 2016, Miguel earned a certificate of completion from Sturgis.

59. In August 2016, Miguel began attending the Michigan School for the Deaf (MSD).

60. All the classes at MSD are conducted in American Sign Language. Therefore, Miguel has full access to all his classes at MSD.

61. It is expected that Miguel will graduate from MSD with a Michigan Merit Diploma.

62. The Sturgis Board is responsible for setting policies for the District and therefore is responsible for any injuries that Plaintiff sustained.

63. The Sturgis Board has the power to hire, fire, and supervise Sturgis employees

64. Defendants' acts have deprived Miguel of his meaningful opportunity to participate in and receive the benefits that other students in Defendants' programs and services participate in and benefit from such as access to ELL services, teachers, classroom instruction, and extra-curricular activities.

65. Defendants' acts were knowing and intentional.

66. Defendants acted with deliberate indifference toward Miguel's federally protected rights.

67. Defendants' actions were taken in bad faith or with gross misjudgment.

68. As a result of Defendants' conduct, Miguel has experienced severe emotional distress, such as humiliation, frustration, anxiety, sadness, hopelessness, isolation, and other forms of mental and emotional anguish.

69. On December 27, 2017, Miguel filed an administrative due process claim alleging violations of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1401, *et seq.*, Title II of the ADA, Section 504 of the Rehabilitation Act, the Persons with Disabilities Civil Rights Act (PDCRA), and Michigan Administrative Rules for Special Education (MARSE), MARSE Rules 340.1701, *et seq*.

70. On May 18, 2018, the administrative law judge dismissed all claims brought pursuant to the ADA, Section 504, and PDCRA for lack of jurisdiction.

71. On August 15, 2018, the administrative law judge dismissed with prejudice all claims brought pursuant to the IDEA and MARSE, due to the parties' having reached an agreement resolving such claims.

## V. LEGAL CLAIMS

### COUNT I

### DEFENDANTS VIOLATED TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12131 *et seq.*

72. Plaintiff incorporates by reference all previous paragraphs of the Complaint herein.

73. Title II of the ADA and its regulations provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. (*See also* 28 C.F.R. Part 35).

74. Defendants are each a public entity subject to Title II of the ADA, 42 U.S.C. § 12131.

75. Miguel is an individual with a disability within the meaning of 42 U.S.C. § 12102.

76. Miguel is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(B).

77. Defendants intentionally violated Miguel's rights under Title II of the ADA and its regulations by intentionally excluding him from participation in and denying him the benefits of Defendants' services, programs, and activities, on the basis of disability, and by subjecting him to discrimination.

12

78. Defendants intentionally violated Miguel's rights under Title II of the ADA and its regulations by failing to provide the auxiliary aids and services necessary to ensure that communication with him was as effective as communication with others.

79. Defendants otherwise intentionally discriminated against Miguel in violation of Title II of the ADA.

80. Defendants exhibited bad faith and/or gross misjudgment in engaging in the conduct that violated Miguel's rights under Title II of the ADA.

81. Defendants acted with deliberate indifference toward Miguel's rights protected by Title II of the ADA.

82. Due to Defendants' violations of Title II of the ADA, Miguel has suffered and continues to suffer mental and emotional suffering, humiliation, frustration, anxiety, sadness, hopelessness, isolation, and other forms of mental and emotional anguish.

## COUNT II

### DEFENDANTS VIOLATED THE PERSONS WITH DISABILITIES CIVIL RIGHTS ACT, M.C.L. 37.1101 *et seq.*

83. Plaintiff incorporates by reference all previous paragraphs of the Complaint herein.

84. The Persons with Disabilities Civil Rights Act ("PDCRA") guarantees, as a civil right, the full and equal utilization of public accommodations, public services, and educational facilities without discrimination because of a disability. M.C.L. 37.1102.

85. The PDCRA prohibits educational institutions from "[d]iscriminat[ing] in any manner in the full utilization of or benefit from the institution, or the services provided and rendered by the institution to an individual because of a disability that is unrelated to the

individual's ability to utilize and benefit from the institution or its services, or because of the use by an individual of adaptive devices or aids." M.C.L. 37.1402.

86. Defendants are each an educational facility within the meaning of M.C.L. 37.1102 and an educational institution within the meaning of M.C.L. 37.1401.

87. Miguel has a disability as defined in M.C.L.A. 37.1103.

88. Miguel's disability is unrelated to his ability to utilize and benefit from Defendants' services.

89. Defendants discriminated against Miguel in the full utilization of or benefit from the services provided and rendered by Defendants due to Miguel's disability.

90. Defendants' acts were knowing and intentional, and exhibited bad faith, gross misjudgment, and deliberate indifference toward Miguel's rights.

91. Defendants otherwise violated Miguel's rights under the PDCRA.

## VI.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A. Find that Defendants violated federal and state law;

B. Find that Plaintiff is the prevailing party;

C. Award Plaintiff compensatory damages;

D. Award Plaintiff his reasonable attorneys fees and costs; and

E. Any other relief deemed necessary.

        Respectfully submitted,

Dated: November 16, 2018       */s/* Mark A. Cody
        Mark A. Cody (P42695)
        Mitchell Sickon (P82407)
        Michigan Protection and Advocacy Service, Inc.
        4095 Legacy Parkway, Suite 500
        Lansing, MI 48911
        (517) 487-1755
        mcody@mpas.org
        msickon@mpas.org

        Caroline Jackson (Admitted April 11, 2018)
        National Association of the Deaf Law and
        Advocacy Center
        8630 Fenton Street, Suite 820
        Silver Spring, MD 20910
        (301) 587-7466
        caroline.jackson@nad.org

        *Attorneys for Plaintiffs*