UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MIGUEL LUNA PEREZ, by his
Next Friend, MARIA PEREZ

        Plaintiff,           Judge Paul L. Maloney

v                          No. 18-01134

STURGIS PUBLIC SCHOOLS,

        Defendant.
_____/

## **DEFENDANT, STURGIS PUBLIC SCHOOLS' MOTION TO DISMISS**

Defendant seeks dismissal of this matter pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has filed suit alleging that he was denied special education services as required by federal law. Plaintiff, however, has not exhausted his administrative remedies under the Individuals with Disabilities Act as is required by federal law before filing suit. Because of Plaintiff's failure to exhaust his administrative remedies, which is explained in the Brief in Support, Plaintiff's claim should be dismissed.  Defendant sought concurrence with its motion.  Concurrence was denied.

                             s/TIMOTHY J. MULLINS_____
                             GIARMARCO, MULLINS & HORTON, PC
DATED: December 13, 2018   Attorney for Defendant

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

MIGUEL LUNA PEREZ, by his
Next Friend, MARIA PEREZ

          Plaintiff,          Judge Paul L. Maloney

v                         No. 18-01134

STURGIS PUBLIC SCHOOLS,

          Defendant.

_____/

**BRIEF IN SUPPORT OF DEFENDANT,
STURGIS PUBLIC SCHOOLS' MOTION TO DISMISS**

**SUMMARY OF THE CASE**

This case raises the questions whether Plaintiff was required to exhaust administrative procedures under the Individuals with Disabilities Education Act ("IDEA") before filing a lawsuit, and whether Plaintiff indeed exhausted those procedures.  The Act requires exhaustion of IDEA procedures when a plaintiff is "seeking relief that is also available under" the IDEA.

Plaintiff, Miguel Perez is a disabled student at Sturgis Public Schools. Plaintiff received special education services under the IDEA because of a hearing impairment. Plaintiff has filed suit over a dispute regarding the special education accommodations he has received. Plaintiff, however, has not exhausted his administrative remedies under the IDEA before filing suit. Plaintiff settled the

2

dispute regarding his special education services before a due process hearing could be completed. Courts have repeatedly held that settling disputes before a due process hearing has been completed does not exhaust IDEA administrative procedures, and a plaintiff cannot file a lawsuit. Because of Plaintiff's failure to exhaust administrative remedies, his claim should be dismissed.

## STATEMENT OF ISSUE PRESENTED

Since Plaintiff has filed suit regarding a dispute over his special education services, should Plaintiff be required to exhaust his administrative remedies under the IDEA before filing suit?

**Yes.**

Has Plaintiff exhausted his administrative remedies under the IDEA where the Plaintiff agreed to dismiss his due complaint by way of settlement before a due process hearing occurred?

**No.**

## MOST CONTROLLING AUTHORITY

20 U.S.C. § 1415(l) states:  "**before the filing of a civil action** under such laws seeking relief that is also available under [IDEA], **the procedures under subsections (f) and (g) shall be exhausted** . . ."

*Fry v. Napoleon Community Schools*, ——U.S. ——, 137 S.Ct. 743, 752, 197 L.Ed.2d 46 (2017) held that "Section 1415(l) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when his suit 'seek[s] relief that is also available' under the IDEA." The Court concluded that in determining whether a suit indeed "seeks" relief for such a denial, a court should look to the gravamen of the plaintiff's complaint. *Id*. at 752, 753

*A.F. v. Espanola Public Schools*, 801 F.3d 1245 (10th Cir. 2015) held that a settlement of an IDEA claim following IDEA mediation, without completing a due process hearing, was not proper administrative exhaustion.

## FACTS

### 1. THE IDEA.

The Individuals with Disabilities Education Act ("IDEA") is a comprehensive and complicated statutory scheme dedicated to the education of disabled students. 20 U.S.C. § 1400, et. seq. The core purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education ("FAPE")." § 1400(d)(1)(A). As defined in the Act, a FAPE comprises "special education and related services"—both "instruction" tailored to meet a child's "unique needs" and sufficient "supportive services" to permit the child to benefit from that instruction. §§ 1401(9), (26), (29).

Under the IDEA, an "individualized education program" ("IEP") serves as the "primary vehicle" for providing each child with the promised FAPE. *Honig v. Doe*, 484 U.S. 305, 311, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); see § 1414(d). IEPs are created by the child's "IEP Team," which is a group of school officials, teachers, and parents that work collaboratively to identify the student's educational needs. §§ 1414(d)(1)(A)(i)(II)(bb), (d)(1)(B). The IEP documents the child's current "levels of academic achievement," specifies "measurable annual goals" for how she can "make progress in the general education curriculum," and lists the "special education and related services" to be provided so that she can "advance appropriately toward [those] goals." §§ 1414(d)(1)(A)(i)(I), (II), (IV)(aa).

When parents and educators disagree on "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child," the parent and student must file an administrative complaint with local school officials. See *Id*. § 1415(b)(6), (f)(1)(A). Then the parties are instructed by statute to hold a "[p]reliminary meeting" with an eye toward talking through the grievance and trying for an early resolution. *Id*. § 1415(f)(1)(B)(i). They can also choose to resolve their differences through mediation. *Id*. § 1415(e). But if no settlement satisfactory to both sides comes to pass, the parties must proceed to a sort of trial, what IDEA calls an "[i]mpartial due process hearing." *Id*. § 1415(f). If the hearing still doesn't satisfy parent and student, an administrative appeal may

follow. *Id*. § 1415(g)(1). If the parent and student still remain "aggrieved by the findings and decision made" after this appeal process, they may then (and only then) "bring a civil action" in federal court. *Id*. § 1415(i)(2)(A). At the same time, if the state fails to provide an appeals process, a party who is aggrieved by the findings and decision in the subsection (f) trial-like proceeding may also proceed to court. *Id*. Plainly in all this, Congress sought to ensure access to courts for IDEA claims but only failing the success of the many alternative dispute opportunities it provided.

The IDEA is clear, however, that if there is a dispute regarding the accommodations provided a student, families must exhaust the IDEA's administrative procedures outlined above before filing suit in court:

> before the filing of a civil action under such laws **seeking relief that is also available** under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter. § 1415 (l).

### 2. PLAINTIFF'S LAWSUIT

Plaintiff alleges that he is a 23-year-old deaf individual who attended Sturgis Public School District from 2004 through 2016. Doc# 10 PgID 114, Amended Complaint ¶¶ 5-6. Plaintiff's lawsuit alleges that school district denied him proper interpreter services and English-language instruction. *Id*. at PageID  115,116,118, ¶¶ 15,18,37-43. As a result, plaintiff claims that he was not provided an education while in class. *Id*. at PageID 118, ¶ 38-43.

Plaintiff claims that on December 27, 2017, he "filed an administrative due process claim alleging violations of the Individuals and Disabilities Education Act" and other statutes related to his belief he was denied educational accommodations. *Id*. at PageID 121, ¶ 69. In his due process claim, which is attached as Exhibit 1, Plaintiff alleges that he "is a student with a disability, as defined by the IDEA and the MARSE under the category of hearing impairment." Exhibit 1, Due Process Complaint, ¶ 4. Plaintiff qualified for special education services as a result of his hearing impairment and received an IEP. *Id*. at ¶¶ 25-27, 38-44. Plaintiff contends that throughout his educational career, Sturgis Public Schools and St. Joseph Intermediate School District "have failed to provide him with a free and appropriate public education ("FAPE"), as required by the IDEA and the MARSE (Michigan Administrative Rules For Special Education), have failed to provide him with an equal educational opportunity, and have discriminated against him on the basis of his disability." Ex. 1 Due Process Complaint, *Id*. at ¶¶ 2, 105-129, 130-141. In support of this claim, Plaintiff argues, among things, that the school district not provide him with intensive language instruction to develop effective communication skills; did not provide Miguel with consistent exposure to an accessible mode of language such as American sign language; did not address Miguel's lack of progress towards the goals and his IEP; and failed to consider opportunities for direct instruction and direct interaction with peers. *Id*. at ¶¶ 114-129.

7

Plaintiff alleges that "[o]n August 15, 2018, the administrative law judge dismissed with prejudice all claims brought pursuant to the IDEA and MARSE, due to the parties having reached an agreement resolving such claims." Doc#10, PageID 122, Amended Complaint ¶ 71. There is no allegation or proof, however, that Plaintiff completed the due process hearing.

### 3. DEFENDANT STURGIS PUBLIC SCHOOLS' MOTION TO DISMISS

On October 12, 2018, Plaintiff filed his complaint against the School District relating to the alleged denial of accommodations to the effect of denying him an education. On November 16, 2018, Plaintiff filed a motion for leave to file an amended complaint, which in part, added allegations related to Plaintiff's pursuit of IDEA procedures. Plaintiff's motion was granted, and Plaintiff filed his First Amended Complaint. Doc#10, PageID 112-125.

Defendant Sturgis Public Schools moves to dismiss the Complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure for the reason that Plaintiff has not fully exhausted his administrative remedies under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., before filing suit.

### STANDARD OF REVIEW

Defendant seeka dismissal of this matter pursuant to Federal Rule of Civil Procedure 12(b)(6). When a Court is presented with a Rule 12(b)(6) motion, "**it may**

8

**consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the defendant's motion [for judgment on the pleadings], so long as they are referred to in the [c]omplaint and are central to the claims contained therein.**" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court must construe these documents "in the light most favorable to the plaintiff, accept all factual allegations as true," and determine whether the plaintiff has alleged "enough factual matter" to "state a claim to relief that is plausible on its face." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability," it has failed to show that relief is plausible as opposed to a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotation marks omitted). The Court also "need not accept as true legal conclusions or unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

## LAW AND ARGUMENT

### I.   PLAINTIFF IS REQUIRED TO EXHAUST HIS ADMINISTRATIVE REMEDIES UNDER THE IDEA BEFORE FILING SUIT.

The IDEA ensures that children with disabilities receive necessary special education services and provides administrative remedies to achieve that goal. *Forest*

*Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 245, 129 S.Ct. 2484, 174 L.Ed.2d 168 (2009);

*Covington v. Knox Cty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000). Section 1415(l)

of the IDEA addresses that Act's relationship with other statutory remedies and

contains an exhaustion requirement:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that **before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.**

29 U.S.C. § 1415(l) (emphasis added). The failure to exhaust administrative

remedies will result in dismissal.  See generally *Covington,* 205 F.3d at 915; *Doe ex*

*rel. Doe v. Dublin City Sch. Dist.*, 453 Fed.Appx. 606, 609 n.1 (6th Cir. 2011);

*Sophie G. v. Wilson Co. Sch.*, 265 F.Supp.3d 765 (M.D. TN. 2017).

Interpreting the above statute, the Supreme Court in *Fry v. Napoleon*

*Community Schools*, ⎯⎯U.S. ⎯⎯, 137 S.Ct. 743, 752, 197 L.Ed.2d 46 (2017) held

that "Section 1415(l) requires that a plaintiff exhaust the IDEA's procedures before

filing an action under the ADA, the Rehabilitation Act, or similar laws when his suit

'seek[s] relief that is also available' under the IDEA." The Court concluded that in

determining whether a suit indeed "seeks" relief for such a denial, a court should

look to the gravamen of the plaintiff's complaint. *Id*. at 752, 753 ("What matters is

10

the crux—or, in legal-speak, the gravamen—of the plaintiff's complaint, setting aside any attempts at artful pleading.").  If the substance of the complaint is a failure to provide FAPE, then the plaintiff must exhaust his administrative remedies under the IDEA before filing suit. *Id*.

The Court elaborated on how to determine whether a plaintiff "seeks" relief for the denial of a FAPE. The Court instructed courts to look to the "substance" of, rather than the labels used in, the plaintiff's complaint. The Court stressed that the use (or non-use) of particular labels is not what matters. The inquiry, for example, does not ride on whether a complaint omits the precise words "FAPE" or "IEP." Such a "magic words" approach would make § 1415(l )'s exhaustion rule too easy to bypass.

The Supreme Court also identified clues as to whether the plaintiffs were seeking relief for the denial of a FAPE.  *Id* at 756-757. First, courts should consider whether the plaintiff could have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school. Second, courts should consider whether an adult at the school could have brought the same claim. Third, courts should consider the history of the proceedings. In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute—thus starting to exhaust the Act's remedies before switching midstream. The Court found that a plaintiff's initial choice to pursue that process

(i.e., by filing a complaint, which triggers a preliminary meeting or possibly mediation, and then a due process hearing) may suggest that she is, indeed, seeking relief for the denial of a FAPE—with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy.

When analyzing these clues, the result is that Plaintiff's claims should be exhausted before he can file this suit.  The last clue should not be in dispute. Plaintiff has filed a due process hearing request under the IDEA on December 27, 2017 related to the relief requested in this lawsuit. Plaintiff concedes that he has sought IDEA administrative remedies.  Amended Complaint Doc#10, PageID 122 ¶ 71; Ex. 1 Due Process Complaint.

These clues also suggest that Plaintiff's claim is one seeking relief for the denial of FAPE.  These are all allegations that are uniquely made in a school setting, not in a public facility that was not a school. First, Plaintiff could not walk into a public library and demand that the library *teach* the student sign language and *teach* the student how to read. A student is not provided a teacher and paraprofessional at a public library. A student does not receive eighth-grade instruction at City Hall. There is no curriculum provided at the police department. Arguing about the quality of educational instruction provided by a teacher and paraprofessional, and the curriculum a student receives in school, are solely educational claims.  Second, a

12

non-student adult could not enter a public school and demand that the school *teach* the adult sign language.  The education of students is a uniquely school function.

Under the Supreme Court's test in *Fry*, these allegations relate to the alleged denial of a FAPE and must be exhausted. This is confirmed by this Court's recent decision in *Richards v. Sturgis Public Schools*, case no. 1:18-CV-358 (W.D. MI Sept. 14, 2018, J. Jonker), which is a nearly identical lawsuit. Ex. 2. In *Richards*, another hearing-impaired student filed suit alleging that the student was denied educational assistance for also believing he was denied a competent interpreter. Instead, the *Richards* plaintiff argued that the interpreter (which is the same interpreter provided in this case) was incompetent and impeded his access to a public education. The plaintiff, however, had not exhausted IDEA remedies before filing suit. This Court dismissed the *Richards* matter due to the plaintiff's failure to exhaust administrative remedies under the IDEA before filing suit.

Here, learning the lesson from *Richards*, plaintiffs have artfully pled in an attempt to avoid any explicit references to the IDEA. But that is not enough to avoid dismissal. In fact, the Supreme Court cautioned against plaintiffs from artfully pleading, finding that such tactics would not relieve the party's obligation to exhaust all available IDEA remedies. *See Fry,* 137 S.Ct. at 752, 753. When examining the gravamen of the claim, including the Due Process Complaint attached as Exhibit 1, the substance of the dispute is in fact seeking relief further their belief that a free and

13

appropriate public education was denied. Plaintiff must fully exhaust IDEA administrative remedies before filing suit for such a claim.

## II.    PLAINTIFF'S CLAIM HAS NOT BEEN PROPERLY EXHAUSTED.

Plaintiff claims that he has exhausted his administrative remedies under the IDEA because he filed a due process complaint regarding the dispute. However, Plaintiff also concedes that the complaint was dismissed before the hearing concluded because the parties reached a settlement. Because the due process complaint was dismissed before its completion, Plaintiff's argument is incorrect. See *A.F. v. Espanola Public Schools*, 801 F.3d 1245 (10th Cir. 2015)(Ex. 3).

Section 1415 (*l*) provides clear instruction as to how claims are properly exhausted:

> "except that before the filing of a civil action under such laws seeking relief that is also available under [IDEA], the procedures under subsections (f) and (g) shall be exhausted"

So, to bring a lawsuit under federal law that "seek[s] relief that is also available under" IDEA, families first must fully exhaust the procedures set forth in subsections (*f*) and (*g*) "to the same extent as would be required had the action been brought under" IDEA. Subsection (*f*) relates to due process hearings. Subsection (*g*) refers to appeals of due process hearings if the initial hearing was conducted by a local educational agency as opposed to a state administrative hearing officer.

14

Circuit Courts have found that the policies underlying the full exhaustion of the administrative procedures are both sound and important. *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 64 (1st Cir.2002); *Crocker v. Tennessee Secondary School Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989). Exhaustion meets Congress' view "that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education." *Crocker*, 873 F.2d at 935. Exhaustion also provides an enormous benefit to the Court. *Id.* The IDEA recognizes that federal courts are generalists with no expertise in special education matters. *Id.* In contrast, the IDEA administrative procedure provides courts with expert fact finding by a specialist in special education laws and issues. 20 U.S.C. § 1415(f)(3)(A); § 1415(f)(3)(D). As the First Circuit recognized in *Frazier*, "[t]his [approach] makes sense because the problems attendant to the evaluation and education of those with special needs are highly ramified and demand the best available expertise." 276 F.3d at 61.

### A. Settling Before Completing A Due Process Hearing Does Not Satisfy The Exhaustion Requirement.

Courts have repeatedly found that a settlement agreement entered into before the completion of a due process hearing does not exhaust administrative remedies under 20 U.S.C. § 1415(i)(2)(A) of the IDEA. This pronouncement was recently echoed in an Opinion authored by current Supreme Court Justice Gorsuch while still

on the Tenth Circuit bench. See *A.F. v. Espanola Public Schools*, 801 F.3d 1245 (10th Cir. 2015)(Ex. 3).  In *A.F.*, the Tenth Circuit indeed held that a settlement of an IDEA claim following IDEA mediation, without completing a due process hearing, was not proper administrative exhaustion. *Id*.

    *A.F.* presents nearly identical facts as in this case. In *A.F.*, the Tenth Circuit described the case as follows:

>     This case ended almost before it began. Christine B. filed her administrative complaint, just as she had to. But before any hearing could be held, she sought to mediate her dispute. And the choice proved fruitful, for in the end the parties signed a settlement agreement. Indeed, as a result of the settlement, Christine B. asked the administrative agency to dismiss her IDEA claims with prejudice, something the agency duly did.
>
>     But after ending her suit she sought to begin it again. Despite the satisfactory result she received through mediation, Christine B. later took to mind the thought she might sue—and she did. To be sure, her lawsuit didn't seek to press a claim under IDEA, itself a tacit acknowledgment that her mediated settlement precluded that option. Instead, she sued under the Americans with Disabilities Act, the Rehabilitation Act, and 42 U.S.C. § 1983, though the allegations in her federal court complaint and those in her original IDEA administrative complaint are nearly identical: both allege that A.F. suffers from the same disabilities and both contend that the school district failed to take her disabilities into account in her educational program.

*Id.* at 1246, Exhibit 3.

    The plaintiff in *A.F.* claimed she had exhausted IDEA administrative procedures by settling the matter through IDEA mediation, before the due process hearing was completed. The Tenth Circuit disagreed with the plaintiff's argument, stating, "[t]he problem is this vision of exhaustion just isn't the one embodied in the

plain text of the statute." *Id*. at 1248. As to why such a settlement would not satisfy

the exhaustion requirement, Justice Gorsuch turned to the plain language of the

statute:

> "If subsection (l ) said that to bring a federal lawsuit under the ADA or
> Rehabilitation Act or Section 1983 you merely had to "satisfy the
> administrative procedures under subsection (f)," we might be able to
> say that, because subsection (f) references subsection (e) and its
> provision of mediation as an alternative means of dispute resolution,
> Christine B. is free and clear to pursue her lawsuit. But that's not what
> subsection (l ) says. It says that to bring a civil action under federal law
> seeking the same relief IDEA supplies, you must exhaust the
> procedures in subsections (f) and (g) "to the same extent" as you must
> to bring a civil action under IDEA itself. And to earn the right to bring
> a civil action under IDEA, **it's just an implacable fact that you must
> qualify under subsection (i) as a party "aggrieved by the findings
> and decision" of administrative trial or appellate authorities**." 801
> F.3d at 1248.

Thus, the Court found that the unambiguous text of the IDEA requires a due process

hearing to be completed with fact findings and a decision to satisfy the exhaustion

requirement. *Id*. at 1247. Entering into a settlement before completion of a due

process hearing, the Court found, prevented such findings and decisions, which

courts have found to provide such an enormous benefit. *Id*.; *Crocker*, 873 F.2d at

935; *Frazier.*, 276 F.3d at 64.

Similarly, in *Zdrowski v. Rieck*, No. 13–12995, 2015 WL 4756470,

(E.D.Mich. Aug.11, 2015)(J. Michelson), the Eastern District of Michigan also

recently found that a settlement agreement did not "suffice[] for IDEA exhaustion

purposes-because there was no due process hearing, there are no findings of fact,

and the order itself does not preserve Plaintiff's right to bring suit in the district court." *Id*, at *13.

Other District Courts have come to similar conclusions, recognizing that development of the underlying factual record is one of the primary purposes of exhaustion, and that it is simply not served by settlement without any decision or findings by a hearing officer. See, e.g., *J.H. ex rel. J.H. v. Egg Harbor Twp. Bd. of Educ.*, No. 08–488, 2009 WL 1322514, at *1 (D.N.J. May 11, 2009) (holding orders of settlement insufficient for exhaustion where "[t]he ALJ orders incorporating the agreements contain no factual record, no resolution of evidentiary disputes, nothing but the agreement arrived at by the two parties"); *Pedraza v. Alameda Unified Sch. Dist.*, No. 05–04977, 2007 WL 949603, at *5 (N.D.Cal. Mar.27, 2007) (holding mediated settlement agreement insufficient to establish federal jurisdiction, but also finding exhaustion futile on the facts presented); *Hamilton v. Bd. of Sch. Comm'rs*, 993 F.Supp. 884 (D.Ala.1996), aff'd without opinion, 112 F.3d 1172 (11th Cir.1997) (explaining that "there is nothing inherent in a settlement agreement that might fulfill the purposes otherwise satisfied by administrative review."); see also *J.H. ex rel. J.H. v. Egg Harbor Twp. Bd. of Educ.*, No. CIV08–488(JBS), 2009 WL 1322514, at *1 (D.N.J. May 11, 2009) (holding that two orders of settlement did not suffice for exhaustion where "[t]he ALJ orders incorporating the agreements contain no factual record, no resolution of evidentiary disputes, nothing but the agreement arrived at

18

by the two parties"); *Banks ex rel. Banks v. Modesto City Sch. Dist.*, 2005 WL 2233213, at *8–9 (E.D.Cal. Sept. 9, 2005) ("As in *Hamilton* and unlike the case in *Woods [v. New Jersey Dept. of Educ.*, 796 F.Supp. 767 (D.N.J.1992) ], the settlement agreement in this case was not entered into after hearings had begun and it was not approved of by an ALJ or other official. Because no hearing was conducted as to Plaintiff's IDEA related issues, she is not an aggrieved party under the statute and her administrative remedies have not been exhausted.").

In this case, Plaintiff did not complete the due process hearing. Similar to the above cases, Plaintiff settled his dispute with the school district before the due process hearing was completed. As the above cases establish, this settlement does not satisfy the IDEA's exhaustion requirement. Rather, Plaintiff was required to complete the due process hearing to satisfy the exhaustion mandate. Therefore, Plaintiff's claim should be dismissed for failing to fully exhaust the IDEA's administrative procedures.

## CONCLUSION

Defendant, Sturgis Public Schools, requests that this Court enter an Order dismissing plaintiff's lawsuit for failing to exhaust his administrative remedies before filing suit.

> s/TIMOTHY J. MULLINS
> GIARMARCO, MULLINS & HORTON, PC
> Attorney for Defendant

DATED: December 20, 2018

19

## <u>CERTIFICATE OF ELECTRONIC SERVICE</u>

TIMOTHY J. MULLINS states that on December 20, 2018, he did serve a copy of **Defendant Sturgis Public Schools' Motion to Dismiss** via the United States District Court electronic transmission on the aforementioned date.

s/TIMOTHY J. MULLINS
GIARMARCO, MULLINS & HORTON, PC
Attorney for Defendant
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084-5280
(248) 457-7020
tmullins@gmhlaw.com
P28021