# EXHIBIT 3

Case 1:18-cv-01134-PLM-RSK   ECF No. 11-4, PageID.183   Filed 12/20/18   Page 2 of
A.F. ex rel Christine B. v. Espanola Public Schools, 801 F.3d 1245 (2015)
322 Ed. Law Rep. 603

KeyCite Yellow Flag - Negative Treatment
Disagreed With by R.M. v. City of St. Charles Public School District, E.D.Mo., May 19, 2016

801 F.3d 1245
United States Court of Appeals,
Tenth Circuit.

A.F., by and through her parent and next friend, CHRISTINE B., Plaintiff–Appellant,
v.
ESPAÑOLA PUBLIC SCHOOLS; Board of Education for the Española Public School District, Defendants–Appellees.

No. 14–2139.
|
Sept. 15, 2015.

**Synopsis**
**Background:** Mother of minor student with disabilities who settled her Individuals with Disabilities Education Act (IDEA) claim following mediation brought action against school district, alleging violations of the Americans with Disabilities Act (ADA), the Rehabilitation Act, and § 1983. The United States District Court for the District of New Mexico granted school district's motion for judgment on the pleadings. Mother appealed.

**[Holding:]** The Court of Appeals, Gorsuch, Circuit Judge, held that settlement after mediation of IDEA claim was not proper administrative exhaustion, as required prior to filing suit.

Affirmed.

Briscoe, Chief Judge, filed dissenting opinion.

West Headnotes (5)

[1]     **Education**
        ⇐ Exhaustion of remedies
        To bring a lawsuit under a federal law seeking relief that is also available under the IDEA, a plaintiff first must administratively exhaust those other federal claims to the same extent as would be required under the IDEA. Individuals with Disabilities Education Act, § 615(i)(2)(A), (*l*), 20 U.S.C.A. § 1415(i)(2)(A), (*l*).

        6 Cases that cite this headnote

[2]     **Education**
        ⇐ Exhaustion of remedies
        Settlement after mediation of IDEA claim against public school district asserted by mother of minor student with disabilities did not constitute proper administrative exhaustion prior to filing suit under the ADA, the Rehabilitation Act, and § 1983, as required by IDEA; mother conceded that relief she sought in lawsuit was also available under IDEA, allegations in suit were nearly identical to IDEA claim, as they both alleged that student suffered from same disabilities and that the school district failed to take her disabilities into account in her educational program, and filing of suit required administrative exhaustion to same extent mandated by IDEA, which required mother to be aggrieved by administrative decision. Individuals with Disabilities Education Act, § 615(f)(1)(B)(i), (i)(2)(A), (*l*), 20 U.S.C.A. § 1415(f)(1)(B)(i), (i)(2)(A), (*l*); 42 U.S.C.A. § 1983; Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; Rehabilitation Act of 1973, § 2 et seq., 29 U.S.C.A. § 701 et seq.

        5 Cases that cite this headnote

[3]     **Statutes**
        ⇐ Plain language; plain, ordinary, common, or literal meaning
        When the terms of the statute are clear and unambiguous, the court's inquiry ends and it must give effect to the plain language of the statute.

        Cases that cite this headnote

[4]  **Constitutional Law**
    Policy

It is and ought to be a very rare and highly unusual thing for courts interpreting a statute to dismiss the results dictated by Congress's plain statutory command on the ground they are implausible as a matter of policy.

Cases that cite this headnote

[5]  **Education**
    Exhaustion of remedies

The question whether a party exhausted administrative remedies under the IDEA may be decided on a motion for judgment on the pleadings and incorporated materials where the failure to exhaust is clear as a matter of law. Individuals with Disabilities Education Act, § 615(i)(2)(A), (*l* ), 20 U.S.C.A. § 1415(i)(2)(A), (*l* ).

3 Cases that cite this headnote

**Attorneys and Law Firms**

**\*1246** Nancy L. Simmons of Law Offices of Nancy L. Simmons, P.C., Albuquerque, New Mexico, for Plaintiff–Appellant.

Elizabeth L. German (Mary Keleher Castle, with her on the brief), German & Associates, LLC, Albuquerque, New Mexico, for Defendants–Appellees.

Before BRISCOE, Chief Judge, MURPHY and GORSUCH, Circuit Judges.

**Opinion**

GORSUCH, Circuit Judge.

The Individuals with Disabilities Education Act requires public school districts that accept federal funding to furnish a "free appropriate public education" to their disabled students. 20 U.S.C. § 1412(a)(1). Sometimes, of course, disputes arise over whether the school district is doing the job it's agreed to do. This is one of those cases. Christine B., the mother of a student known in these proceedings as A.F., contends that the school district failed to address appropriately her daughter's disabilities in the educational program it formulated for her.

When a dispute like this emerges, the parent and student must file an administrative complaint with local school officials. *See id.* § 1415(b)(6), (f)(1)(A). Then the parties are instructed by statute to hold a "[p]reliminary meeting" with an eye toward talking through the grievance and trying for an early resolution. *Id.* § 1415(f)(1)(B)(i). They can also choose to resolve their differences through mediation. *Id.* § 1415(e). But if no settlement satisfactory to both sides comes to pass, the parties must proceed to a sort of trial, what IDEA calls an "[i]mpartial due process hearing." *Id.* § 1415(f). If the hearing still doesn't satisfy parent and student, an administrative appeal may follow. *Id.* § 1415(g)(1). If the parent and student still remain "aggrieved by the findings and decision made" after this appeal process, they may then (and only then) "bring a civil action" in federal court. *Id.* § 1415(i)(2)(A). At the same time, if the state fails to provide an appeals process, a party who is aggrieved by the findings and decision in the subsection (f) trial-like proceeding may also proceed to court. *Id.* Plainly in all this, Congress sought to ensure access to courts for IDEA claims but only failing the success of the many alternative dispute opportunities it provided.

This case ended almost before it began. Christine B. filed her administrative complaint, just as she had to. But before any hearing could be held, she sought to mediate her dispute. And the choice proved fruitful, for in the end the parties signed a settlement agreement. Indeed, as a result of the settlement, Christine B. asked the administrative agency to dismiss her IDEA claims with prejudice, something the agency duly did.

But after ending her suit she sought to begin it again. Despite the satisfactory result she received through mediation, Christine B. later took to mind the thought she might sue—and she did. To be sure, her lawsuit didn't seek to press a claim under IDEA, itself a tacit acknowledgment that her mediated settlement precluded that option. Instead, she sued under the Americans with Disabilities Act, the Rehabilitation Act, and 42 U.S.C. § 1983, though the allegations in her federal court complaint and those in her original IDEA administrative complaint are nearly identical: both allege that A.F. suffers from the same disabilities and both contend that the school district failed to take her disabilities into account in her

educational program. *1247 Agreeing with the school district that Christine B. failed to exhaust available administrative remedies, the district court dismissed her lawsuit and it is this result she now asks us to overturn.

There's no doubt that it's often possible to pursue claims under IDEA and other federal statutes seriatim just as Christine B. wishes to do. Indeed, Congress expressly guaranteed as much, stating that IDEA's promises and procedures don't necessarily extinguish one's "rights ... and remedies" under other federal laws like the ADA and Rehabilitation Act. 20 U.S.C. § 1415(*l*). In fact, Congress added this language to clarify its disagreement with the Supreme Court's suggestion in *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), that a claim under IDEA (or, really, its predecessor statute, the Education of the Handicapped Act) should be the exclusive federal statutory remedy for any education-related complaint by disabled public school students.

[1] But Congress didn't stop there. After emphasizing that IDEA doesn't always preclude relief under laws like the ADA and Rehabilitation Act, Congress added this caveat:

> except that before the filing of a civil action under such laws seeking relief that is also available under [IDEA], the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under [IDEA].

20 U.S.C. § 1415(*l*). So it is that, to bring a lawsuit under federal law that "seek[s] relief that is also available under" IDEA, you first must exhaust the procedures set forth in subsections (f) and (g) "to the same extent as would be required had the action been brought under" IDEA. And, as we've seen, to "bring a civil action" under IDEA you must be "aggrieved by the findings and decision made" after the administrative appeals process (or trial process if no appeal process is provided). *Id.* § 1415(i)(2)(A).

[2] It's here where Christine B. faces a problem, just as the district court recognized. She accepts that her current lawsuit "seek[s] relief that is also available under" IDEA and thus triggers subsection (*l*)'s exhaustion requirement. To be sure, her lawsuit seeks damages—a remedy that's "ordinarily unavailable in administrative [IDEA] hearings." *Cudjoe v. Indep. Sch. Dist. No. 12,* 297 F.3d 1058, 1066 (10th Cir.2002). But some time ago this court held that the "dispositive question" when assessing the applicability of subsection (*l*)'s exhaustion requirement isn't whether the plaintiff seeks damages or some other particular remedy, but "whether the plaintiff has alleged injuries that could be redressed *to any degree* by the IDEA's administrative procedures and remedies." *Padilla ex rel. Padilla v. Sch. Dist. No. 1,* 233 F.3d 1268, 1274 (10th Cir.2000) (emphasis added). Neither does Christine B. ask us to revisit *Padilla* or otherwise dispute that the injuries she seeks to redress in her lawsuit are indeed capable of being redressed to some degree by IDEA's administrative procedures. And with that, with an admission of subsection (*l*)'s applicability, it's very hard to see how she can satisfy it. Subsection (*l*) required her to exhaust the procedures set forth in subsections (f) and (g) to the same extent necessary to bring a civil action under IDEA itself. And to bring such an action she must be able to show that she's "aggrieved by the findings and decision" of the administrative trial authorities described in subsection (f) or the administrative appellate authorities described in subsection (g). Something she manifestly is not.

Coming at the point from a different angle, Christine B.'s problem is that *1248 there's only one exhaustion rule for IDEA claims and other federal claims seeking relief also available under IDEA. It's clear Christine B. cannot bring an IDEA lawsuit in federal court after choosing to settle her IDEA claims and agreeing to their dismissal with prejudice. She even tacitly concedes this by declining any attempt to raise them here. And from this it follows ineluctably that an ADA or Rehabilitation Act or § 1983 lawsuit seeking the same relief is also barred.

Christine B. responds this way. She notes that subsection (f) permits the parties to opt out of the trial-like administrative process and pursue mediation under subsection (e). *See id.* § 1415(f)(1)(B)(i). So by mediating her IDEA claim under subsection (e), she says, she necessarily satisfied the procedures described in subsection (f). And given that no appeal is necessary or even available after a mediated settlement, subsection (g) is beside the point. It's in this way, she argues, that she exhausted the administrative procedures available to her. Our dissenting colleague seems to adopt this same line of reasoning too.

Case 1:18-cv-01134-PLM-RSK    ECF No. 11-4, PageID.186    Filed 12/20/18    Page 5 of 13
A.F. ex rel Christine B. v. Espanola Public Schools, 801 F.3d 1245 (2015)
322 Ed. Law Rep. 603

The problem is this vision of exhaustion just isn't the one embodied in the plain text of the statute. If subsection (*l*) said that to bring a federal lawsuit under the ADA or Rehabilitation Act or Section 1983 you merely had to "satisfy the administrative procedures under subsection (f)," we might be able to say that, because subsection (f) references subsection (e) and its provision of mediation as an alternative means of dispute resolution, Christine B. is free and clear to pursue her lawsuit. But that's not what subsection (*l*) says. It says that to bring a civil action under federal law seeking the same relief IDEA supplies, you must exhaust the procedures in subsections (f) and (g) "to the same extent" as you must to bring a civil action under IDEA itself. And to earn the right to bring a civil action under IDEA, it's just an implacable fact that you must qualify under subsection (i) as a party "aggrieved by the findings and decision" of administrative trial or appellate authorities. And neither Christine B. nor the dissent even attempts to suggest she qualifies as that.

Without statutory text to help her, Christine B. urges us to examine precedent. And it's true enough that otherwise unlikely statutory interpretations sometimes look more attractive when backed by the force of precedent we're obliged to obey. But that's just not the case here either. Christine B. directs us first to *Ellenberg ex rel. S.E. v. New Mexico Military Institute,* 478 F.3d 1262 (10th Cir.2007). But *Ellenberg* held that subsection (*l*)'s exhaustion requirement didn't apply to the plaintiff's federal claims there precisely because IDEA could "offer[ ] no relief" for the particular wrongs the plaintiff asserted. *Id.* at 1280–81. Here again and by contrast, Christine B. *accepts* that subsection (*l*)'s exhaustion requirements apply to all of her federal claims and argues only that she's satisfied those requirements—an argument that, as we've seen, the statutory text just can't bear. Had she contested the applicability of subsection (*l*) to her case, or perhaps asked us to revisit *Padilla's* expansive view of subsection (*l*)'s reach, we might have had a different case. Indeed, there are notes in the dissent that could be read to suggest arguments along just those lines. But Christine B. has made no such argument for herself either in the district court or this one.

Neither does Christine B.'s citation to *Muskrat ex rel. J.M. v. Deer Creek Public Schools,* 715 F.3d 775 (10th Cir.2013), prove more helpful to her cause. There the parents filed suit under various statutes seeking damages for "continuing medical consequences" arising from the school *1249 district's alleged abuse of a "timeout" room. *Id.* at 785. This court proceeded on the premise that IDEA could supply some remedial help to address the parents' concerns and so, under *Padilla,* subsection (*l*)'s exhaustion requirement did apply. But the court then observed that the parents, through an agreement with the school, had obtained *all* the relief IDEA could possibly provide. *See id.* at 785–86. Given this, the court held, requiring them to walk through the remaining IDEA administrative processes—when no more relief could possibly be won under the statute—would be "futile." *Id.* at 786. In doing so, the court accepted that IDEA's administrative exhaustion requirement is subject to a traditional futility exception. *See Honig v. Doe,* 484 U.S. 305, 327, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988) (noting in the context of the Education of the Handicapped Act, IDEA's predecessor, that "parents may bypass the administrative process where exhaustion would be futile or inadequate").

Quite unlike the parents in *Muskrat,* however, Christine B. never attempted a futility argument in this case before the district court issued its final judgment. Instead (and again) she contended only that she had actually and successfully exhausted every administrative avenue IDEA specifies for cases like hers. To be sure, *after* the district court entered final judgment Christine B. sought to reopen her case so she could introduce a futility argument. But the district court could find no justifiable reason for her failure to present the argument before final judgment and denied the motion to reopen on that basis (among others). *See generally* Fed.R.Civ.P. 60(b) (requiring parties to show excusable neglect or the like). Maybe the result in this case might have been different if the argument had been presented earlier. Certainly our dissenting colleague seems to take the view that requiring further administrative litigation in these circumstances would be a waste of time and effort. *See* Dissent at 1257. But neither Christine B. nor the dissent offers any ground on which we might reverse the district court, for even now they do not offer a colorable reason why she failed to present a futility argument before judgment or attempt to suggest how the district court's original judgment committed plain error by failing to address such an argument.

[3] [4] Beyond text and precedent, Christine B. appeals to policy, asserting that by following the statute's plain terms we risk "thwart[ing]" the very idea of IDEA, at least as she conceives of it. In her view it's simply unimaginable

Case 1:18-cv-01134-PLM-RSK ECF No. 11-4, PageID.187 Filed 12/20/18 Page 6 of 13
A.F. ex rel Christine B. v. Espanola Public Schools, 801 F.3d 1245 (2015)
322 Ed. Law Rep. 603

that Congress might have wanted to compel a claimant to choose between accepting an early mediated resolution or foregoing that relief in hope of obtaining fuller relief through federal court litigation months or years later. Our dissenting colleague voices much the same argument. The problem is that where, as here, "the terms of the statute are clear and unambiguous, the inquiry ends and we simply give effect to the plain language of the statute." *United States v. Sprenger,* 625 F.3d 1305, 1307 (10th Cir.2010) (internal quotation mark omitted). Indeed, it is and ought to be a very rare and highly unusual thing for courts to dismiss the results dictated by Congress's plain statutory command on the ground they are implausible as a matter of "policy." Yes, there's scrivener's error doctrine. *See, e.g., U.S. Nat. Bank of Or. v. Indep. Ins. Agents of Am., Inc.,* 508 U.S. 439, 462, 113 S.Ct. 2173, 124 L.Ed.2d 402 (1993). But we hardly have anything like that here and neither Christine B. nor the dissent identifies any recognized doctrine that might allow us to disregard the plain terms of IDEA's exhaustion requirement.

*1250 Even beyond this fundamental problem lies another for there is nothing remotely implausible about the "policy" result the plain language dictates. After *Smith,* Congress in subsection (*l*) surely indicated that it does not regard IDEA as the sole federal statutory tool available to remedy education-related wrongs. But, as we've seen, in responding to *Smith* Congress also expressly chose to link IDEA claims to other federal claims through 20 U.S.C. § 1415(*l*)'s exhaustion requirement. Christine B. and the dissent may wish this linkage didn't exist and we can imagine a rational Congress choosing to sever it. But neither do we find it hard to imagine a rational Congress choosing to do just what the Supreme Court in *Smith* thought Congress had done, funneling all education-related federal lawsuits into IDEA exclusively. And we can easily imagine a rational Congress doing exactly what it did after *Smith,* taking one of many possible intermediate positions by requiring those who wish to forego a mediated IDEA settlement to exhaust (or prove futile) all of the administrative grievance processes available to them before bringing any related federal lawsuit. While we readily admit many different plausible, indeed respectable, policy choices could be made in this field, no one has given us any reason to think the policy decision embodied in the text adopted by Congress is anything less than those things as well. And it's simply not our place to displace Congress's plain and plainly rational directions with our own.

Indeed, like most legislation, we don't doubt that IDEA sought to balance a number of competing purposes in a whole array of areas (like seeking to help children *and* respect local educational authorities) and it's hardly beyond the pale to think it did just that here (by allowing for litigation in extreme cases *and* encouraging settlement or administrative resolution in most). To permit a litigant to invoke the supposedly " 'plain purpose[s]' of legislation at the expense of the terms of the statute itself" risks doing no more "in the end [than] prevent[ing] the effectuation of congressional intent" by replacing Congress's compromise with another of our own devise. *Bd. of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.,* 474 U.S. 361, 373–74, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986); *see also In re Dawes,* 652 F.3d 1236, 1243 (10th Cir.2011) ("[D]eparting from a precise statutory text may do no more than disturb a carefully wrought legislative compromise." (internal quotation mark omitted)).

[5] Failing all else, Christine B. suggests we should at least remand this case for further factual development (read: discovery) on the exhaustion question. She says the district court acted too quickly in dismissing the case in response to the defendants' motion for judgment on the pleadings and committed error when it declined to reopen the case in response to her post-judgment motions seeking time for further factual development. But like the district court, we see no profit in this course because it's clear as a matter of law that she cannot prove exhaustion given the pleadings she filed in the proceedings below and the arguments she presented when challenged and given a full and fair chance to respond. And it's settled law in this circuit, as elsewhere, that the question whether a party exhausted administrative remedies may be decided on a motion for judgment on the pleadings and incorporated materials where the failure to exhaust is clear as a matter of law. *See Allen v. Zavaras,* 568 F.3d 1197, 1202 (10th Cir.2009).

In the end, this is one of those cases where bad argument risks bad law. It's possible Christine B. could have won this case without depending on an argument that calls on this court to mangle plain *1251 statutory terms. Maybe Christine B. could have argued that subsection (*l*) was inapplicable to her claims. Maybe she could have argued the futility of further exhaustion. But any potential argument along lines like those was abandoned long ago. And what argument that's left runs headlong into an

Case 1:18-cv-01134-PLM-RSK    ECF No. 11-4, PageID.188    Filed 12/20/18    Page 7 of 13
A.F. ex rel Christine B. v. Espanola Public Schools, 801 F.3d 1245 (2015)
322 Ed. Law Rep. 603

unambiguous textual command, a command that yields an entirely plausible policy result, a result that may not be Christine B.'s first choice or the dissent's but that no one can (or has even tried to) call absurd or somehow otherwise unworthy of our respect. And it cannot be the case that the failure of one party in one case to press potentially winning arguments should induce this or any court to rewrite Congress's clear statutory directions for all cases to come.

Affirmed.

BRISCOE, Chief Judge, dissenting.
In this case of first impression, the majority misreads 20 U.S.C. § 1415(*l*) to require a litigant, such as plaintiff A.F., to forgo any resolution of her claim under the Individuals with Disabilities Education Act (IDEA) in order to preserve the ability to seek remedies in federal court under acts other than the IDEA. More specifically, a claimant under the IDEA must now, in order to later be able to file suit in federal court under other related statutes, refuse to settle her IDEA claim during the preliminary meeting required by 20 U.S.C. § 1415(f)(1)(B) or the mediation process described in 20 U.S.C. § 1415(e), and must also lose in both the due process hearing outlined in 20 U.S.C. § 1415(f)(1)(A) and the subsequent administrative appeal outlined in 20 U.S.C. § 1415(g). This was clearly not the intent of Congress and, ironically enough, harms the interests of the children that IDEA was intended to protect. As a result, I respectfully dissent.

I

*Factual background*

The following facts are derived from A.F.'s complaint. A.F., born on June 2, 1996, suffers from a learning disorder that she identifies as dyslexia. From the time she was old enough to attend school until the summer of 2012, A.F. attended the Espanola Public Schools (EPS). When she was in elementary school, A.F. participated in EPS's Title I program (focused on educationally at-risk students), but nevertheless made only minimal progress in reading and spelling. In middle school, A.F. continued to struggle academically, particularly with language arts, math, and life science. Indeed, A.F. failed half of her classes during both her seventh and eighth grade years.

At the beginning of the 2010–2011 school year, A.F., though old enough to attend high school, was retained by EPS in the eighth grade and directed to attend middle school. At the end of the first semester of the 2010–2011 school year, EPS reconsidered its decision, despite A.F. having failed two courses during the fall semester, and directed her to attend Espanola Valley High School (EVHS) as a ninth-grader during the spring semester. When A.F. began attending EVHS, she and her mother were instructed by EPS that she would attend a segregated credit recovery class during the morning and would then need to be picked up at noon each day. When A.F.'s mother objected, EPS agreed to allow A.F. to stay in the EVHS library until she could ride the bus home at the end of the school day. During the time that A.F. spent in the EVHS library, she was not provided with instruction or attention from school staff. At some point during the spring semester of 2011, EPS changed A.F.'s afternoon schedule and placed her in additional classes. A.F., **\*1252** however, ultimately failed all but one of those classes.

A.F. continued to attend EVHS during the 2011–2012 school year. Although A.F.'s mother asked EPS to evaluate and help A.F., EPS advised her that it could be between three and six months before A.F. would be evaluated. During the fall semester of 2011, A.F. failed four of six classes and received Ds in the other two classes.

In the summer of 2012, A.F., due to the difficulties she encountered with EPS, transferred to a private school named Victory Faith Christian Academy.

*A.F.'s due process complaint*

On February 10, 2012, while she was still attending EVHS, A.F. filed with the New Mexico Public Education Department (NMPED) a special education due process hearing complaint. The complaint alleged, in pertinent part, that EPS "ha[d] not evaluated or identified [A.F.] under either the IDEA or Section 504 of the Rehabilitation Act." App. at 73. The complaint further alleged that EPS violated the IDEA by failing to "timely and comprehensively evaluate [A.F.] in all areas of suspected disability and need from August 2009 to the present," "failing to identify [A.F.] as eligible for special

Case 1:18-cv-01134-PLM-RSK   ECF No. 11-4, PageID.189   Filed 12/20/18   Page 8 of 13
A.F. ex rel Christine B. v. Espanola Public Schools, 801 F.3d 1245 (2015)
322 Ed. Law Rep. 603

education and related services under the IDEA from August 2009 to the present," "failing to develop and implement an IEP [ (individualized education program) ] for [A.F.] from August 2009 to the present," and "failing to provide [A.F.'s mother] with information required in connection with her evaluation requests, including prior written notice and IDEA procedural safeguards, since the 2008 to 2009 school year." *Id.* at 74. The complaint sought "prospective relief" in the form of "an order requiring the [EPS]" to (1) "identify [A.F.] as a student eligible for special education," (2) "develop an interim IEP for [A.F.]," (3) "obtain comprehensive evaluation(s) of [A.F.] ... in all areas of need including academic development, emotional functioning and attentional issues," (4) "retain an independent Facilitator to facilitate development of an IEP for [A.F.] and to include independent evaluators and [A.F.'s] attorney in the FIEP [ (final individualized education program) ] at [EPS] expense," and (5) provide A.F. with "compensatory education and related services to address areas of need identified by the evaluations and credit recovery." *Id.*

On May 16, 2012, A.F. and EPS resolved the due process hearing complaint by entering into a written mediation agreement. Contrary to the majority's interpretation of the mediation agreement, it purported to "resolve all claims under the [IDEA]." *Id.* at 76. As part of the mediation agreement, EPS agreed to "identify [A.F.] as a child with Specific Learning Disabilities in the areas of reading comprehension, written expression, and math calculation," *id.,* and "to make [a] compensatory education program ... available to [A.F.] for so long as [she] enrolled in Victory Faith and resid[ed] within the geographical boundaries of the [EPS]," *id.* at 77. EPS also agreed to pay a portion of the costs associated with A.F. attending Victory Faith, and to provide her with transportation to and from Victory Faith.

On May 18, 2012, two days after the parties entered in the mediation agreement, A.F. filed a motion with the NMPED to dismiss her due process hearing complaint with prejudice. The motion was granted by the NMPED that same day.

*The federal court proceedings*

On August 23, 2012, A.F., by and through her parent and next friend, Christine B., filed suit against defendants in the First Judicial District Court for the County *1253 of Santa Fe, New Mexico, asserting "causes of action for (1) violation of federal disability discrimination laws, pursuant to Section 504 of the Rehabilitation Act ('Section 504') and the Americans with Disabilities Act ('ADA'), as actionable pursuant to such Acts and pursuant to 42 U.S.C. §§ 1983 and 1988, and (2) violation of her Fourteenth Amendment rights to procedural Due Process, as actionable pursuant to 42 U.S.C. §§ 1983 and 1988." *Id.* at 21.

A.F.'s combined Section 504 and ADA claim (the first cause of action in her complaint) alleged that EPS discriminated against her on the basis of her learning disability and was deliberately indifferent to federal disability laws requiring it to take her disability into account in the delivery of her education, "as evidenced by [its] failure to accommodate her need for identification, evaluation, and assistance as a student with learning disabilities affecting major areas of her life." *Id.* at 31. The claim further alleged that, "[a]s a direct and proximate result of [EPS's] violations of federal disability laws, A.F. suffered loss of educational opportunities, emotional distress and mental anguish, damage to her self-esteem, and potentially irremediable developmental delays, entitling A.F. to compensatory damages in an amount to be proven at trial." *Id.*

A.F.'s § 1983 due process claim (the second cause of action in her complaint) alleged that A.F. had "a protected liberty and property interest in her public school education and the wide array of benefits and services that should have been made available to her, including an interest in identification, evaluation, and assistance as a child with learning disabilities." *Id.* at 32. The claim in turn alleged that EPS personnel "personally participated as [EPS] policymakers in the decisions to deny [her] some or all of these benefits and services and caused the violations to occur." *Id.* The claim alleged several alternative theories of liability, including "supervisory liability," *id.,* "failure of [EPS] to train [its] employees," *id.,* and EPS's "establish[ment] [of] a de facto course of conduct of denying disabled students the rights and liberty and property interests to which they were entitled," *id.* at 33. The claim further alleged that EPS's "actions and deliberate indifference denied A.F. the procedural protections of federal and state law by denying her a public education and special education on an arbitrary and capricious basis," and that "[n]o post-deprivation hearing

was adequate to remedy these violations of procedural Due Process." *Id.* at 34. Lastly, the claim alleged that, "[a]s a direct and proximate result of [EPS's] conduct, A.F. suffered emotional distress and mental anguish, damage to her self-esteem, and potentially irremediable developmental delays, entitling A.F. to compensatory damages in an amount to be proven at trial." *Id.* at 35.

On November 13, 2012, defendants removed the complaint to federal district court, asserting jurisdiction based on the existence of a federal question under 28 U.S.C. § 1331. *Id.* at 16–18.

On April 8, 2013, defendants moved for judgment on the pleadings, arguing, in pertinent part, that A.F. had failed to exhaust her administrative remedies as required by 20 U.S.C. § 1415(*l*). Attached to defendants' motion were copies of the due process hearing complaint that A.F. filed with the NMPED, the mediation agreement between A.F. and EPS settling that complaint, and A.F.'s motion to dismiss her due process hearing complaint with prejudice.

On December 6, 2013, the district court issued a memorandum opinion and order granting defendants' motion for judgment on the pleadings. In doing so, the district court first concluded that "[a]ll of [A.F.]'s *1254 claims require[d] exhaustion, because the relief she s[ought] [wa]s also available under the **IDEA**." *Id.* at 247. "The entirety of [A.F.]'s Complaint," the district court noted, "center[ed] on the dispute over [EPS's] efforts to accommodate A.F.'s educational needs," and her "discrimination and Section 1983 claims [we]re part and parcel of her educationally based grievance." *Id.* at 249. The district court in turn "determine[d] that the Mediation Agreement ... d[id] not satisfy [A.F.]'s obligation to exhaust her administrative remedies under the **IDEA**." *Id.* More specifically, the district court concluded that "the **IDEA's exhaustion** requirement ... is not satisfied when parties enter into a mediated **settlement** agreement," and that, instead, "there must be, at the very least, a state-level impartial **due process** hearing before the aggrieved party can file a civil action in federal court." *Id.* at 251. Although the district court acknowledged that "[e]xhaustion is not required where (1) it would be futile, (2) it would fail to provide adequate relief, or (3) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law," it noted that A.F. had failed to "address whether any of the[se] ... exceptions to the exhaustion requirement appl[ied] to [her] case." *Id.* (internal quotation marks omitted).

On January 2, 2014, A.F. filed a motion to alter or amend the judgment. *Id.* at 254. In that motion, A.F. conceded that she was required under the IDEA to exhaust her administrative remedies, but she argued that the dismissal of her due process hearing complaint, pursuant to the mediation agreement, constituted exhaustion. A.F. also argued "that the mediated settlement of [her] educational relief claims ma[d]e[ ] further exhaustion of administrative remedies futile." *Id.* at 266.

On July 8, 2014, the district court issued a memorandum opinion and order denying A.F.'s motion to alter or amend judgment. The district court reaffirmed its conclusion that "a mediated settlement agreement does not satisfy the exhaustion requirement of 1415(*l*)." *Id.* at 362. The district court also rejected A.F.'s assertion that exhaustion would be futile.

II

*Standard of review*

"We review a district court's grant of a motion for judgment on the pleadings de novo, using the same standard that applies to a Rule 12(b)(6) motion." *Park Univ. Enters. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir.2006).

*What does § 1415(l) require in terms of exhaustion?*

IDEA's administrative exhaustion provision provides as follows:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 et seq.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a

civil action under such laws seeking relief that is also available under this subchapter, *the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C. § 1415(*l*) (emphasis added).

"Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." **\*1255** *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). "Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Id.* (internal quotation marks omitted). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341, 117 S.Ct. 843.

The majority in this case concludes that the above-highlighted language of § 1415(*l*) unambiguously requires a litigant, such as A.F., to "qualify under subsection [1415](i) as a party 'aggrieved by the findings and decision' of administrative trial and appellate authorities." Maj. Op. at 1248. In other words, the majority interprets the highlighted language as unambiguously requiring a litigant, in order to proceed in federal court under a statute other than IDEA, to forgo resolution of her claim by way of a preliminary meeting or mediation and to lose at both the administrative trial and appellate levels.

I submit, however, that the highlighted language is " 'capable of being understood' " in another, and indeed more reasonable, " 'way [ ].' " *Chickasaw Nation v. United States,* 534 U.S. 84, 90, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001) (quoting Webster's Ninth New Collegiate Dictionary 77 (1985)). In order to explain this alternative interpretation, it is necessary to review how an IDEA complaint is filed and resolved, including a close examination of the procedures that Congress made available under §§ 1415(f) and (g).

Section 1415(a) requires "[a]ny State educational agency, State agency, or local educational agency that receives assistance under this subchapter" to "establish and maintain" a variety of procedures "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a). Of relevance here is "[a]n opportunity ... to present a complaint." *Id.* § 1415(b)(6).

The "opportunity ... to present a complaint" referred to in § 1415(b)(6) is fleshed out in greater detail in §§ 1415(f) and (g). To begin with, the process anticipates that "parents" may file a complaint and in turn be afforded "an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local educational agency, as determined by State law or by the State educational agency." *Id.* § 1415(f)(1)(A). Prior to a due process hearing being conducted, however, and within fifteen days of the receipt of the complaint, "the local educational agency" must "convene a [preliminary] meeting with the parents and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint." *Id.* § 1415(f)(1)(B)(i). The intended purpose of this "preliminary meeting" is to allow the "the parents of the child [to] discuss their complaint, and the facts that form the basis of the complaint," and to afford "the local educational agency ... the opportunity to resolve the complaint." *Id.*

The only exception to this preliminary meeting requirement is if "the parents and the local educational agency agree in writing to waive such meeting, or agree to use the mediation process described in subsection (e)." *Id.* The opportunity for mediation, which is detailed in § 1415(e), is intended "to allow parties to disputes involving any matter ... to resolve such disputes through a mediation process." *Id.* § 1415(e). Notably, this process anticipates that "complaint[s]" may be "resolve[d]" through the mediation process by way of "a legally binding [written] agreement." *Id.* § 1415(e)(2)(F).

**\*1256** "If the local educational agency has not resolved the complaint to the satisfaction of the parents within 30 days of the receipt of the complaint" (by way of the preliminary meeting or mediation), "the due process hearing may occur." *Id.* § 1415(f)(1)(B)(ii). The outcome of such a hearing is "a decision made by a hearing officer ... on substantive grounds based on a determination of whether the child received a free appropriate public education." *Id.* § 1415(f)(3)(E).

Subsection (g) affords, in certain circumstances, a right of administrative appeal. Specifically, "[i]f the hearing required by subsection (f) is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decisions to the State educational agency." *Id.* § 1415(g)(1). "The State educational agency," in turn, is required to "conduct an impartial review of the findings and decision appealed" and "make an independent decision upon completion of such review." *Id.* § 1415(g)(2).

With this statutory framework in mind, I now return to the language of § 1415(*l*) and submit that it can reasonably, and indeed should, be interpreted as merely requiring a claimant to make full use of the procedures outlined in §§ 1415(f) and (g) to attempt to resolve her IDEA claim. Under this interpretation, a mediated resolution of an IDEA claim would be considered sufficient to constitute exhaustion for purposes of § 1415(*l*). That is not only because the statutory framework anticipates, and in fact encourages, resolution of IDEA claims by way of mediation, but also because a mediated resolution leaves nothing to be decided at a due process hearing or in an administrative appeal.

The interpretation of § 1415(*l*) adopted by the majority is, in my view, inconsistent with the overall statutory framework developed by Congress. Indeed, why would Congress, after creating a framework that quite clearly encourages resolution of IDEA claims by various means, force a claimant to avoid resolution of her claim by mediation or preliminary meeting and lose at both the due process hearing and administrative appeal stages? Doing so would effectively render superfluous the mediation and preliminary meeting provisions of the statute. Further, precisely how could a claimant ensure a loss in both the due process hearing and the administrative appeal, yet later present a viable claim in federal court?

The majority's interpretation is also, in my view, inconsistent with Congress's more specific purpose in enacting § 1415(*l*). Congress added this statutory language to clarify its disagreement with the majority opinion, and to effectively codify Justice Brennan's dissenting opinion, in *Smith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984). The key sentence in Justice Brennan's dissent, for our purposes, is this:

> The natural resolution of the conflict between the EHA [the predecessor to the IDEA], on the one hand, and §§ 504 and 1983, on the other, is to require the plaintiff with a claim covered by the EHA to pursue relief through the administrative channels established by that Act before seeking redress in the courts under § 504 or § 1983.

468 U.S. at 1024, 104 S.Ct. 3457. Nothing in this statement suggests that a plaintiff must forgo mediation and unsuccessfully pursue relief through the statute's administrative channels before proceeding to federal court on his or her other related claims. Consequently, it makes little sense to say that Congress intended the opposite result in enacting § 1415(*l*).

Finally, the majority's interpretation is inconsistent with the very purpose of IDEA. It forces a claimant to choose between **\*1257** mediating a resolution to her IDEA claim (even if the local educational agency were willing to admit and correct the alleged errors) and thereby obtaining some or all of the relief sought under IDEA (in this case, for example, the creation of a compensatory education program, the payment of costs associated with attending another school, and transportation to and from that school), or forgoing any relief at all and waiting (while the child ages and potentially continues to receive something other than the requisite "free appropriate public education") in hopes of later filing suit and obtaining relief under both IDEA and other statutes. That, I again submit, could not have been the intent of Congress in adopting § 1415(*l*).

*The other rationales offered by the district court*

The district court in this case purported to "adopt[ ] the First Circuit's interpretation of the IDEA's exhaustion requirement" outlined in *Weber v. Cranston Sch. Comm.*, 212 F.3d 41 (1st Cir.2000). App. at 251. According to the district court, in that case "the First Circuit addressed the issue of what constitutes exhaustion under the IDEA and found that mediation is insufficient." *Id.* at 250 (citing 212 F.3d at 53). A review of *Weber*, however, indicates that the First Circuit's holding was not that broad. The parent/plaintiff in *Weber* argued that she complied with §

1415(*l*)'s exhaustion requirement "through the numerous administrative complaints that she filed" prior to initiating her civil lawsuit. 212 F.3d at 53. In rejecting this argument, the First Circuit stated as follows:

> Although Weber filed three CRP complaints with the Rhode Island Department of Elementary and Secondary Education, two complaints with the Office of Equity and Access, and participated in a mediation on the issue of declassification, she never initiated the due process hearing described in IDEA. IDEA's mandate is explicit: plaintiffs must exhaust IDEA's impartial due process hearing procedures in order to bring a civil action under subchapter II of IDEA or any "such law[ ] seeking relief that is also available" under subchapter II of IDEA. 20 U.S.C. § 1415(*l*).

*Id.* Thus, although the plaintiff/parent in *Weber* "participated in a mediation" on a single issue, there is no indication that the mediation was successful, i.e., that she actually resolved that issue (or any of the administrative complaints) by way of a written mediation agreement. Consequently, the *Weber* decision did not address the question at issue in this case, i.e., whether the resolution of a due process hearing complaint by way of a written mediation agreement is sufficient to constitute exhaustion of the procedures outlined in subsections (f) and (g).

The district court also asserted that its "determination that a settlement does not meet the exhaustion requirements [wa]s supported by the policy rationales requiring exhaustion." App. at 251. These policy rationales, the district court asserted, include "(1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decisions by giving the agency the first opportunity to correct any error." *Id.* at 251–52 (quoting *Ass'n for Cmty. Living v. Romer*, 992 F.2d 1040, 1044 (10th Cir.1993)). And, according to the district court, "allowing the settlement in this case to constitute exhaustion would permit plaintiffs to proceed with their claims without developing a factual record, allowing the educational system to exercise its expertise in resolving this conflict, or *1258 providing the parties a full opportunity to avoid excessive litigation." *Id.* at 252.

The district court's analysis was wrong. To be sure, the use of a written mediation agreement eliminates the need for a due process hearing under § 1415(f), and, as a result, there is no administrative record that can be reviewed in any subsequent civil action. But resolving a due process complaint by mediation otherwise appears to serve the purposes of IDEA, and in an arguably more efficient fashion than by way of a due process hearing and subsequent administrative appeal. In particular, it allows the local educational agency that is the subject of the complaint to exercise its discretion and expertise in order to immediately correct any errors that may have occurred. Further, by preventing the need for a due process hearing and subsequent administrative appeal, it spares resources of local and State educational agencies. And, most importantly, it best serves the interests of the child at issue by promptly resolving the pending issues.

### III

In sum, I conclude that resolution of a due process complaint by way of a written mediation agreement constitutes exhaustion for purposes of § 1415(*l*). Because the district court concluded otherwise, I would reverse the judgment of the district court and remand for further proceedings.

**All Citations**

801 F.3d 1245, 322 Ed. Law Rep. 603

End of Document © 2018 Thomson Reuters. No claim to original U.S. Government Works.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
WESTERN DIVISION

MIGUEL LUNA PEREZ,

      Plaintiff,                    Judge Robert J. Jonker

v                                  No. 18-01134

STURGIS PUBLIC SCHOOLS
and ST. JOSEPH ISD,

      Defendants.
_____/

## DEFENDANT, STURGIS PUBLIC SCHOOLS' MOTION TO DISMISS

Defendants seek dismissal of this matter pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has filed suit alleging that he was denied special education services as required by federal law. Plaintiff, however, has not exhausted his administrative remedies under the Individuals with Disabilities Act as is required by federal law before filing suit. Because of Plaintiff's failure to exhaust his administrative remedies, which is explained in the Brief in Support, Plaintiff's claim should be dismissed. Defendants sought concurrence with its motion. Concurrence was denied.

                                         s/TIMOTHY J. MULLINS
                                         GIARMARCO, MULLINS & HORTON, PC
DATED: November 17, 2018    Attorney for Defendant, Sturgis Public Schools