UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIA PEREZ, Next Friend of
MIGUEL LUNA PEREZ,

        Plaintiff,        Case No. 1:18-cv-1134

v.        Hon. Paul L. Maloney

STURGIS PUBLIC SCHOOLS and
STURGIS PUBLIC SCHOOLS
BOARD OF EDUCATION,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is now before the Court on a motion to dismiss filed by defendants Sturgis Public School District (ECF No. 11).[1]

### I.    Plaintiffs' claims

Plaintiff Miguel Luna Perez's allegations set forth in the amended complaint are summarized as follows. Plaintiff is a 23-year-old deaf individual who resides in the Sturgis Public School District ("SPSD"). Amend. Compl. (ECF No. 10, PageID.114). He attended SPSD schools from 2004 through 2016. Plaintiff is a qualified individual with a disability within the meaning of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.* and Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), M.C.L. 37.1101 *et seq.*,

---

[1] The docket sheet lists two defendants in this case, "Sturgis Public Schools" (presumably the Sturgis Public School District) and "Sturgis Public Schools Board of Education" (presumably the Sturgis Public School District's Board of Education). Both defendants are represented by the same law firm. The Court notes that defendants' counsel does not use the appropriate caption in its filings, listing "Sturgis Public Schools" as the sole defendant. In the present motion, defendants' counsel asks to have plaintiff's entire lawsuit dismissed, yet makes no reference to defendant Sturgis Public Schools Board of Education. Based on this record, the Court construes the present motion directed only at defendant Sturgis Public Schools.

1

because he has a physical impairment and a mental impairment that substantially limits one or more major life activities, including hearing, speaking, and communicating. *Id*. at PageID.113-114.

Due to his impairment, plaintiff requires a qualified sign language interpreter to communicate with individuals who do not know sign language. *Id*. at PageID.115. When plaintiff arrived in the SPSD, he did not know English. *Id*. at PageID.116. While plaintiff's parents are not deaf, they speak only Spanish and require a Spanish-language interpreter to communicate with non-Spanish speaking school personnel and to translate all written materials. *Id*. at PageID.115. From the time plaintiff began his education at the SPSD, school personnel noted that he could not understand speech and relied on sign language to access communication. However, the SPSD did not provide a qualified sign language interpreter to enable plaintiff to access classroom instruction or to benefit from social interaction with his peers. *Id*. at PageID.116. Rather, the SPSD provided plaintiff with an educational assistant, Gayle Cunningham, who was not a qualified sign language interpreter. *Id*.[2]

Plaintiff further alleged: that the SPSD did not advise him or his parents that Ms. Cunningham did not know sign language; and that the SPSD misrepresented to both plaintiff and his parents that Ms. Cunningham used "signed English;" and, that neither plaintiff nor his parents had any reason to know these facts. *Id*. at PageID.117-118. In addition, the SPSD: misrepresented to plaintiff and his parents that he had access to the same educational services as other students and that it provided him with auxiliary aids and services sufficient for him to participate and benefit from classroom instruction; misrepresented plaintiff's academic achievement by awarding him an "A" or "B" in nearly every class; and, that neither plaintiff nor his parents knew or could have

---

[2] While plaintiff alleged that the SPSD "provided qualified sign language interpreters to another deaf student between 2012 and 2016", he does not elaborate on this allegation. *Id*. at PageID.117.

known that the SPSD made these misrepresentations. *Id*. at PageID.119-120.  In March 2016, plaintiff and his parents learned for the first time that he would receive a "certificate of completion" rather than a regular high school diploma. *Id*.  In May 2016, plaintiff began attending the Michigan School for the Deaf (MSD), which teaches classes in American Sign Language. *Id*.

Based on these facts, plaintiff claims that the SPSD deprived him of a meaningful opportunity to participate in and to receive benefits that other students received and that its actions were knowing, intentional, taken in bad faith or with gross misjudgment. *Id*. at PageID.121.  As a result of the SPSD's actions, plaintiff has experienced severe emotional distress, such as humiliation, frustration, anxiety, sadness, hopelessness, isolation, and other forms of mental and emotional anguish. *Id*.

On December 27, 2017, plaintiff filed an administrative due process claim alleging violations of the of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1401, *et seq.*, Title II of the ADA, Section 504 of the Rehabilitation Act, the PWDCRA, and Michigan Administrative Rules for Special Education (MARSE), MARSE Rules 340.1701, *et seq*. *Id*.  On May 18, 2018, the state administrative law judge (ALJ) dismissed all claims brought by plaintiff (identified as the "petitioner" in the agency proceedings) pursuant to the ADA, Section 504, and PWDCRA for lack of jurisdiction.  *Id*.  This order, entitled "Order Following Prehearing Conference and Extending 45 Day Timeline," states in pertinent part as follows:

> Petitioner's Due Process Hearing Request raised concerns regarding the Americans with Disabilities Act, the Rehabilitation Act and the Michigan Persons with Disabilities Civil Rights Act.  Respondents filed a Motion to Dismiss these claims.  Petitioner filed a response.  During the Prehearing Conference, Petitioner raised no objection to the dismissal of these claims as they are outside the jurisdiction of this Tribunal. Therefore, all such claims are **DISMISSED** without prejudice.

3

State Administrative Order (ECF No. 12-3, PageID.245) (emphasis in original). Then, on August 15, 2018, the ALJ dismissed with prejudice all claims brought pursuant to the IDEA and MARSE because the parties reached an agreement resolving those claims. *Id*. at PageID.122.

Plaintiff's amended complaint consists of two counts. In Count I, plaintiff alleged that defendants violated Title II of the ADA. In Count II, plaintiff alleged that defendants violated the PWDCRA. Plaintiff seeks compensatory damages, reasonable attorney fees, and other relief. *Id*. at PageID.122-124.

## II.     Plaintiff's Proposed Second Amended Complaint

Plaintiff's response to the motion to dismiss included a proposed second amended complaint, dated January 17, 2019 (ECF No. 12-2). Plaintiff apparently wants to file a second amended complaint based upon a footnote in his response to defendants' motion for summary judgment. *See* Plaintiff's Response at footnote 2 (ECF No. 12, PageID.205). Plaintiff cannot proceed in this manner. If plaintiff wants to file a second amended complaint, he should file a motion pursuant to Fed. R. Civ. P. 15 and W.D. Mich. LCivR 7. Accordingly, to the extent plaintiff seeks to file a second amended complaint, his request should be denied.

## III.    Defendant's motion to dismiss

### A.     Legal Standard

In its present motion, defendants seek to dismiss plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(6) ('failure to state a claim upon which relief can be granted") because he did not exhaust his administrative remedies prior to filing suit as required by federal law, in this case the IDEA. The Sixth Circuit addressed the importance of the exhaustion requirement in actions involving the IDEA in *Crocker v. Tennessee Secondary School Athletic Association*, 873 F.2d 933 (6th Cir. 1989):

4

> The policies underlying this exhaustion requirement are both sound and important. States are given the power to place themselves in compliance with the law, and the incentive to develop a regular system for fairly resolving conflicts under the Act. Federal courts – generalists with no expertise in the educational needs of handicapped students – are given the benefit of expert factfinding by a state agency devoted to this very purpose. Such a mechanism is necessary to give effect to a fundamental policy underlying the [IDEA] "that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education." *Smith v. Robinson*, 468 U.S. 992, 1012, 82 L. Ed. 2d 746, 104 S. Ct. 3457 (1984) [superceded by statute on other grounds]. Were federal courts to set themselves up as the initial arbiters of handicapped children's educational needs before the administrative process is used, they would endanger not only the procedural but also the substantive purposes of the Act.

*Crocker*, 873 F.2d at 935.

While plaintiff has not alleged an IDEA violation in this case, the statute's exhaustion requirement applies because he has raised federal claims related to his alleged failure to receive a free and appropriate public education:

> The IDEA "requires states that receive federal funds for education to provide every disabled child who wants it a 'free and appropriate public education' (FAPE)." *L.H. v. Hamilton County Department of Education*, Nos. 17-5989, 18-506, ---F.3d---, 2018 WL 3966517 (6th Cir. Aug. 20, 2018) (citing 20 U.S.C. § 1400 *et seq*.).  The IDEA requires exhaustion of administrative procedures "before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) [the] suit 'seeks relief that is also available' under the IDEA. *Fry v. Napoleon Community Schools*, 137 S. Ct. 743, 752 (2017) (quoting 20 U.S.C. § 1415(l)).  The IDEA's exhaustion rule "hinges on whether a lawsuit seeks relief for the denial of a free appropriate public education. If a lawsuit charges such a denial, the plaintiff cannot escape [the exhaustion requirement] merely by bringing her suit under a statute other than the IDEA." *Id*. at 754.  If the plaintiff seeks a remedy under a different statute – that is, if he or she "seek[s] redress for . . . other harms, independent of any FAPE denial," the IDEA's exhaustion rule does not apply. *Id*. To determine whether a plaintiff is seeking relief for the denial of a FAPE, the Court should focus on "the crux – or in legal-speak, the gravamen – of the plaintiff's complaint…." *Id*.  The Court must "examine whether a plaintiff's complaint – the principal instrument by which she describes her case – seeks relief for the denial of a public education," focusing on substance over form. *Id*. at 755.

> The Supreme Court details two hypotheticals to consider in determining whether the gravamen of a plaintiff's complaint concerns the denial of a FAPE:

5

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school – say, a public theater or library? And second, could an adult at the school – say an employee or visitor – have pressed essentially the same grievance? . . . [W]hen the answer is no, then the complaint probably does concern a FAPE. . . ."

*Id*. at 756. Another clue that the gravamen of the complaint is the denial of a FAPE appears when a plaintiff invokes the IDEA's administrative procedures before filing suit. *Id*.

The Court readily finds that under *Fry*, Plaintiff's case hinges on the alleged denial of a FAPE. Plaintiff's complaint refers repeatedly to the alleged inadequacy of the education he received from 2004 through early 2016. His claim under the ADA alleges explicitly that "the defendants "intentionally discriminated against [Plaintiff] in violation of Title II by acting in bad faith and with gross misjudgment in failing to provide a FAPE and concealing this failure from [Plaintiff] and his family." (ECF No. 26, PageID.150.)  His claim under the Rehabilitation Act uses the same language. (*Id.*, PageID.149.) The answer to each of the *Fry* hypotheticals is no.  Plaintiff could not have brought essentially the same claim if the alleged conduct had occurred at a different kind of public facility. Nor could an adult at the school have pressed essentially the same grievance. Plaintiff is already pursuing exhaustion of the IDEA's procedures, another indication that the denial of the FAPE is at the heart of the complaint.

Plaintiff contends that even if the *Fry* factors call for dismissal of the case based on lack of exhaustion, the Court should simply stay the case until the administrative process is complete.  That is not what *Fry* mandates. To the contrary, *Fry* speaks of exhausting the process before a suit is filed at all. 137 S. Ct. at 752. Moreover, this holding is based on the text of the applicable statute:

> Nothing in this chapter [of the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the proceedings under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l).

Plaintiff offers no persuasive authority for the Court to skirt the language of the statute and the holding of *Fry* simply so the case can stay in suspended animation on the docket while the administrative process unfolds. It appears the

6

> real reason driving the request is Plaintiff's concern that some claims may be lost to a statute of limitations defense. As to any state law claims, the Plaintiff can protect himself by promptly filing in the state court. As to any federal claim, the short answer is that the statute and *Fry* require exhaustion before filing suit. If that rule has statute of limitations consequences – something the Court is **NOT** deciding at this time – then that is the result the law requires, and not a basis to ignore the rule.

*Richards v. Sturgis*, No. 1:18-cv-358, slip op. (ECF No. 50, PageID.381-383) (W.D. Mich. Sept. 14, 2018) (emphasis in original).[3]

As in *Richards*, the gravamen of plaintiff's present claims under the ADA and Michigan's PWDCRA is that defendants denied him FAPE by failing to provide plaintiff with a certified sign language interpreter. Because this lawsuit involves the alleged denial of a FAPE, plaintiff cannot escape the exhaustion requirement "merely by bringing [his] suit under a statute other than the IDEA.'" *Richards*, slip op. at PageID.381, quoting *Fry*, 137 S. Ct. at 754.

Here, however, plaintiff no longer has an IDEA claim to exhaust, because he settled that claim at the administrative level. Plaintiff contends that because he settled his IDEA claim at the administrative level, this rendered exhaustion of his related claims for damages under the ADA and the PWDCRA as either unnecessary or futile. Contrary to plaintiff's contention, dismissal of his IDEA claim does not circumvent the exhaustion requirement of his related claims. As the court explained in *A.F. ex rel Christine B. v. Espanola Public Schools*, 801 F.3d 1245 (10th Cir. 2015), these other claims must be exhausted:

> There's no doubt that it's often possible to pursue claims under IDEA and other federal statutes seriatim just as [the plaintiff] Christine B. wishes to do. Indeed, Congress expressly guaranteed as much, stating that IDEA's promises and procedures don't necessarily extinguish one's "rights . . . and remedies" under other federal laws like the ADA and Rehabilitation Act. 20 U.S.C. § 1415(l). In fact, Congress added this language to clarify its disagreement with the Supreme Court's suggestion in S*mith v. Robinson*, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984), that a claim under IDEA (or, really, its predecessor statute, the Education

---

[3] The Court notes that the present lawsuit involves some of the same law firms as in *Richards*, i.e., Michigan Protection & Advocacy Service, Inc. (plaintiff) and Giamarco, Mullins & Horton PC (defendants).

of the Handicapped Act) should be the exclusive federal statutory remedy for any education-related complaint by disabled public school students.

But Congress didn't stop there. After emphasizing that IDEA doesn't always preclude relief under laws like the ADA and Rehabilitation Act, Congress added this caveat:

> except that before the filing of a civil action under such laws seeking relief that is also available under [IDEA], the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under [IDEA].

20 U.S.C. § 1415(l). So it is that, to bring a lawsuit under federal law that "seek[s] relief that is also available under" IDEA, you first must exhaust the procedures set forth in subsections (f) and (g) "to the same extent as would be required had the action been brought under" IDEA. And, as we've seen, to "bring a civil action" under IDEA you must be "aggrieved by the findings and decision made" after the administrative appeals process (or trial process if no appeal process is provided). *Id*. § 1415(i)(2)(A).

It's here where [the plaintiff] Christine B. faces a problem, just as the district court recognized. She accepts that her current lawsuit "seek[s] relief that is also available under" IDEA and thus triggers subsection (l)'s exhaustion requirement. To be sure, her lawsuit seeks damages—a remedy that's "ordinarily unavailable in administrative [IDEA] hearings." *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1066 (10th Cir. 2002). But some time ago this court held that the "dispositive question" when assessing the applicability of subsection (l)'s exhaustion requirement isn't whether the plaintiff seeks damages or some other particular remedy, but "whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." *Padilla ex rel. Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1274 (10th Cir. 2000) (emphasis added). Neither does Christine B. ask us to revisit *Padilla* or otherwise dispute that the injuries she seeks to redress in her lawsuit are indeed capable of being redressed to some degree by IDEA's administrative procedures. And with that, with an admission of subsection (l)'s applicability, it's very hard to see how she can satisfy it. Subsection (l) required her to exhaust the procedures set forth in subsections (f) and (g) to the same extent necessary to bring a civil action under IDEA itself. And to bring such an action she must be able to show that she's "aggrieved by the findings and decision" of the administrative trial authorities described in subsection (f) or the administrative appellate authorities described in subsection (g). Something she manifestly is not.

Coming at the point from a different angle, Christine B.'s problem is that there's only one exhaustion rule for IDEA claims and other federal claims seeking relief also available under IDEA. *It's clear Christine B. cannot bring an IDEA lawsuit in federal court after choosing to settle her IDEA claims and agreeing to*

8

> *their dismissal with prejudice. She even tacitly concedes this by declining any attempt to raise them here. And from this it follows ineluctably that an ADA or Rehabilitation Act or § 1983 lawsuit seeking the same relief is also barred.*

*A.F. ex rel Christine B.*, 801 F.3d 1247-48 (emphasis added).[4]  *See Zdrowski v. Rieck*, 119 F. Supp. 3d 643, 661 (E.D. Mich. 2015) ("settlement entered before a hearing and without any factual findings by the ALJ is not sufficient to exhaust IDEA remedies") (collecting cases).  The court's analysis in *A.F. ex rel Christine B.* is persuasive and applicable here, where plaintiff settled his IDEA claim in the administrative agency and then raised his education-related claims seeking monetary damages in a subsequent lawsuit brought under the ADA and the PWDCRA.  For all of these reasons, defendant Sturgis Public Schools' motion to dismiss should be granted as to the ADA claim alleged in Count I.

Plaintiff's only remaining claim against defendant Sturgis Public Schools is Count II, his state law claim for relief under the PWDCRA.  Here, the Court exercised its supplemental jurisdiction over plaintiff's state law claim pursuant to 28 U.S.C. § 1367, presumably because that claim was intimately related to the alleged ADA violation.  *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy").  The dismissal of plaintiff's federal claim against defendants, however, requires the Court to re-examine the issue of supplemental jurisdiction for state law claims against these defendants.  Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction."  Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not

---

[4] The Court notes that 20 U.S.C. § 1415(f) sets forth the requirements for an "[i]mpartial due process hearing."  In addition, 20 U.S.C. § 1415(g)(1) provides that "If the hearing required by subsection (f) is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency."

to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, the Court has rejected plaintiff's federal claim under the ADA. There is no reason to retain supplemental jurisdiction over plaintiff's state law claim under the PWDCRA. Accordingly, the Court should dismiss this state law claim asserted against defendant Sturgis Public Schools.[5]

### IV. RECOMMENDATION

For these reasons, I respectfully recommend that defendant Sturgis Public Schools' motion to dismiss (ECF No. 11) be **GRANTED** as to plaintiff's ADA claim alleged it in Count I.

I further recommend that plaintiff's state law claim under the PWDCRA alleged in Count II against defendant Sturgis Public Schools be **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1367.

I further recommend that plaintiff's action against defendant Sturgis Public Schools be **DISMISSED**.

Dated: June 20, 2019  /s/ Ray Kent
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[5] In reaching this determination, the Court notes that the PWDCRA claim appears to be pre-empted under state law. *See Miller ex rel. Miller v. Lord*, 262 Mich. App. 640, 645, 686 N.W.2d 800 (2004) (where plaintiff alleged that the defendants' actions "revolved around an issue dealt with in [sic] the IEP", the state court concluded that "plaintiffs' claims under the PWDCRA are precluded by the Michigan special education act (MSEA), M.C.L. § 380.1701 *et seq.*, which was enacted under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*").